(April 29, 1915.)

LOUISE E. BARTON, Plaintiff, v. MOSES ALEXANDER, Governor, JOSEPH H. PETERSON, Attorney General, and GEORGE R. BARKER, Secretary of State, as the Board of Trustees of the Soldiers' Home, and ROBERT BARTON, Commandant of the Soldiers' Home, Defendants.

[148 Pac. 471.]

WRIT OF PROHIBITION—ANTI-NEPOTISM LAW—TITLE TO—CONSTITUTIONAL LAW—STATUTORY CONSTRUCTION—ASSOCIATES IN OFFICE—WHO ARE—POLICE POWER—REASONABLE REGULATION—DEGREES OF KINDRED — HOW COMPUTED — CIVIL LAW — RETROSPECTIVE ACT — ALLOWANCE OF CLAIMS—MUNICIPAL SUBDIVISIONS.

1. *Held,* that the title to the anti-nepotism bill or act is sufficiently broad to include and cover all of the provisions of said act and is not repugnant to the provisions of sec. 16, art. 3, of the state constitution.

2. "Associates in office" are those who are united in action; who have a common purpose; who share the responsibility or authority and among whom is reasonable equality; those who are authorized by law to perform the duties jointly or as a body.

3. *Held,* that the commandant of the Soldiers' Home is not an "associate in office" of the board of trustees of the Soldiers' Home.

4. The phrase, "associates in office," as used in said act refers to officers who are required under the law to act together, each having substantially equal authority in matters coming before them as boards or councils under the law.

5. Said act prohibits the officers therein named, or boards or councils composed of such officers, from appointing anyone to office related to them or to any member of such board or council within the third degree by affinity or consanguinity.

6. Said act prohibits the officers therein mentioned from making appointments on agreement or promise with other officers.

7. If a person is illegally appointed under the provisions of said act, the officer of the state, district, county, city or other municipal subdivision of the state who pays out of any public funds under his control or draws or authorizes the drawing of any warrant or authority for the payment out of any public funds of the salary, wages, pay, or compensation of any such ineligible person, knowing him to be ineligible, is guilty of a misdemeanor and may be punished as provided in the first section of said act.

8. If a person is legally appointed and eligible to hold the office to which he is appointed, the proper board or officer is not prohibited by said act from passing upon and allowing the claim of such appointee for salary, or wages, although such appointee may be related to such officer or a member of the board which is required under the law to pass upon such claim.

9. Said act is a police regulation and its provisions are reasonable and enforceable and not unconstitutional.

10. Under the provisions of sec. 5705, Rev. Codes, the degrees of kindred are computed according to the rules of the civil law, which rules are applicable to the act in question.

11. *Held,* that it was not intended that the provisions of said act should operate retrospectively.

12. Where appointments of persons related to officers within the prohibited degree have been made prior to the going into effect of said act, such appointees cannot legally be paid out of the public funds any salary or wages for services rendered subsequent to the going into effect of said act, to wit, the 8th day of May, 1915.

13. Irrigation, drainage, improvement and school districts do not come within the provisions of said act, since they are not municipal subdivisions of the state and are not specially included in said act.

14. *Held,* that said board of trustees of the Soldiers' Home will not violate any of the provisions of said act by retaining the plaintiff as matron of said Home.

Original application for a writ of prohibition to the board of trustees of the Soldiers' Home.    Alternative writ granted. Anti-nepotism law construed.

C. W. Gibson and J. P. Pope, for Plaintiff.

The act violates sec. 3, art. 6, of the constitution, in providing an additional qualification to hold a civil office, in that no person shall be appointed for the sole disqualification that he is related within the third degree by affinity or consanguinity to the appointing officer or his voting associates. (*Bradley v. Clark,* 133 Cal. 196, 65 Pac. 395; *Thomas v. Owens,* 4 Md. 189; *Stryker v. Churchill,* 39 Misc. Rep. 578, 80 N. Y. Supp. 588; *Black v. Trower,* 79 Va. 123.)

The appointments of county officers under sec. 6 of art. 18 of the constitution is a matter of discretion placed in the

officers and board of county commissioners. (*Campbell v. Board of Commissioners,* 5 Ida. 53, 46 Pac. 1022.)

The act should be held unconstitutional if this discretion is taken away from a single officer of this state. (*In re Kane v. Gaynor,* 144 App. Div. 196, 129 N. Y. Supp. 280; *Ackley v. Perrin,* 10 Ida. 531, 79 Pac. 192.)

Consideration of the power of the legislative department to exercise or limit the exercise of the power of the executive department has often been before courts. (*Elliott v. McCrea,* 23 Ida. 524, 130 Pac. 785; *Ingard v. Barker* (Ida.), 147 Pac. 293; *People v. Freeman,* 80 Cal. 233, 13 Am. St. 122, 22 Pac. 173.)

The title to the act under consideration does not mention or refer to the provision in the body of the act which makes it unlawful for any executive, legislative, judicial, ministerial or other officer of the state, county, municipality, etc., to appoint or vote for the appointment of any person related to any of his associates in office within the third degree. (Sutherland, Stat. Const., sec. 111; Cooley's Const. Lim., 6th ed., p. 178; *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295; *Turner v. Coffin,* 9 Ida. 338, 74 Pac. 962; *Katz v. Herrick,* 12 Ida. 1, 86 Pac. 873; *State v. Mulkey,* 6 Ida. 617, 59 Pac. 17; *Gerding v. Board of Co. Commrs.,* 13 Ida. 444, 90 Pac. 357.)

Statutes not expressly made retrospective in their terms are otherwise construed, if possible. (*People v. Hays,* 4 Cal. 127; *Bond v. Munro,* 28 Ga. 597; *Porter v. Glenn,* 87 Ill. App. 106; *In re Kennett,* 24 N. H. 139; *Sayre v. Wisner,* 8 Wend. (N. Y.) 661; *Dash v. Van Kleeck,* 7 Johns. (N. Y.) 477, 5 Am. Dec. 291; *Lindsay v. United States Savings etc. Co.,* 120 Ala. 156, 24 So. 171, 42 L. R. A. 783.)

If the body of the act were retrospective in terms, which it is not, the title is insufficient because it does not indicate that fact. (*Lindsay v. United States Sav. etc. Co., supra; Snell v. Chicago,* 133 Ill. 413, 24 N. E. 532, 8 L. R. A. 858; *Lockport v. Gaylord,* 61 Ill. 276; *Brieswick v. Mayor of Brunswick,* 51 Ga. 639, 21 Am. Rep. 240.)

"Associates are persons united, or acting together by mutual consent or compact in the promotion of some common object." (Anderson's Law Dictionary; *Lechmere Bank v. Boynton,* 11 Cush. (Mass.) 369.)

J. H. Peterson, Atty. Genl., T. C. Coffin, E. G. Davis, and Herbert Wing, Assts., for Defendants.

When the bill was amended in the Senate in committee of the whole by the insertion of the phrase "associates in office," no change in this regard was made in the title. We concede that the title is not sufficiently broad to cover such a phrase, and refer the court to the case of *State v. Dolan,* 13 Ida. 693, 700, 92 Pac. 995, 14 L. R. A., N. S., 1259, wherein this question received consideration.

This nepotism act, if it be sustained at all, must be sustained as an exercise of the police power of the state. It is a well-established principle that police regulations must be reasonable in order to be lawful. (Freund on Police Power, sec. 33; *State v. Dolan, supra.*)

The specific mention of road districts as being included within the terms of the law, and the fact that road districts are analogous to improvement districts, irrigation districts, drainage districts and school districts, might seem to evidence the intention of the legislature to exclude from the category all but road districts. This view is strengthened, so far as it respects school districts, by reason of the provisions of subdivision L of sec. 58 of the school code (1913 Sess. Laws, p. 44), and the ruling of this court in the case of *Fenton v. Board of County Commrs.,* 20 Ida. 392, 398, 119 Pac. 41, wherein the court held that under the provisions of sec. 6, art. 7, of the constitution, a school district was not a municipal corporation.

SULLIVAN, C. J.—This is an original application in this court for a writ of prohibition to the board of trustees of the Soldiers' Home and to Colonel Robert Barton, commandant of said home, requiring them to show cause why they and each of them should not permit the petitioner to continue

in the discharge of her duties as matron of said Soldiers' Home on and after May 8, 1915.

It appears from the petition that the petitioner, or plaintiff, is now and ever since the 15th day of September, 1913, has been, the duly appointed, qualified and acting matron of the Soldiers' Home; that the board of trustees of said home is composed of the Governor, the Secretary of State and the Attorney General, and that the defendant Robert Barton is, and ever since the first day of June, 1913, has been, the duly appointed, qualified and acting commandant of said Soldiers' Home, and is the father of the plaintiff; that said board of trustees has control and supervision of said Soldiers' Home, including the appointment and removal from office of the plaintiff; that on February 18, 1915, the Governor approved what is commonly known as the "Anti-Nepotism Bill," which bill makes certain appointments of relatives to positions unlawful and subjects the officer making such appointments to fine and removal from office; that on the 6th day of April, 1915, the plaintiff received a communication from said board of trustees notifying her that on and after the 8th day of May, 1915, the date when said anti-nepotism act becomes effective, her services would no longer be needed, for the following reasons and none other: 1st, that Col. Barton, commandant of the said Soldiers' Home, who, in the opinion of the board of trustees, is an associate in office of the members of said board, within the meaning of said act, is her father and therefore her appointment and continuance in office is unlawful under said act; 2d, that the furnishing of employment by the said board of trustees and the said Colonel Barton is a violation of the provisions of said act; that said act is a police measure and if the same attempts to provide against the appointment to office or employment of relatives by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty, when the salary, wages, pay or compensation of such appointee is to be paid out of the public funds or fees of office by the associate of any officer so related, it is unconstitutional and void as being unreasonable;

that said act, if it attempts to render unlawful the furnishing of employment to persons legally appointed prior to its enactment and approval under penalty of removal from office of the officer appointing such ineligible person, is unconstitutional and void as denying to the plaintiff and all others similarly situated, due process of law and equal protection of the laws under the constitution of the state of Idaho, and under sec. 14 of the amendments to the constitution of the United States; 3d, that if said act attempts to prohibit appointments as above set forth, the same is unconstitutional and void on the ground that the title fails to specify either of said grounds and is in violation of sec. 16, art. 3, of the constitution of the state of Idaho.

It is then alleged that the plaintiff is without any plain, speedy and adequate remedy in the ordinary course of law, and that she is beneficially interested in retaining her position as matron.

An alternative writ of prohibition was issued as prayed for, and on the return day the defendants demurred to the petition on the ground that the same did not state facts sufficient to entitle petitioner to the relief prayed for.

On the argument of the demurrer, counsel for the respective parties conceded that there were only questions of law involved in the case. The principal question is the constitutionality of the act known as the "Anti-Nepotism Bill," approved February 18, 1915, and in case said act is held constitutional, a construction of the several provisions of said act is sought to be obtained.

Said act is as follows:

"An Act making it an offense for any executive, legislative, judicial, ministerial, or other officer of this state, or any district, county, city or other municipal subdivision of the state, to appoint or vote for the appointment of any person related to him by affinity or consanguinity within the third degree, to any clerkship, office, position, employment or duty in any department or office of this state, or of any district, county, city, or other municipal subdivision of the state of which the

person making or participating in the appointment may be an officer or employee, or to appoint any person so related to any other such officer in consideration of the agreement or promise of such other officer to appoint any person so related to the officer making such appointment; prohibiting the payment of any such ineligible person out of any public funds and providing for suitable punishment and removal from office for the violation of this act.

"*Be It Enacted by the Legislature of the State of Idaho:*

"Section 1. That an executive, legislative, judicial, ministerial, or other officer of the State or of any district, county, city or other municipal subdivision of the State, including road districts, who appoints or votes for the appointment of any person related to him or to any of his associates in office by affinity or consanguinity within the third degree, to any clerkship, office, position, employment, or duty, when the salary, wages, pay, or compensation of such appointee is to be paid out of public funds or fees of office, or who appoints or furnishes employment to any person whose salary, wages, pay or compensation is to be paid out of public funds or fees of office, and who is related by either blood or marriage within the third degree to any other executive, legislative, ministerial, or other public officer, when such appointment is made on the agreement or promise of such other officer or any other public officer to appoint or furnish employment to any one so related to the officer making or voting for such appointment, is guilty of a misdemeanor involving official misconduct and upon conviction thereof shall be punished by fine of not less than Ten ($10.00) Dollars or more than One Thousand ($1,000.00) Dollars, and such officer making such appointment shall forfeit his office and be ineligible for appointment to such office for one year thereafter.

"Sec. 2. That an officer of this State or any district, county, city or other municipal subdivision of the State who pays out of any public funds under his control or who draws or authorizes the drawing of any warrant or authority for the payment out of any public fund of the salary, wages,

pay, or compensation of any such ineligible person, knowing him to be ineligible, is guilty of a misdemeanor and shall be punished as provided in Section 1 of this Act.''

The first question presented by counsel for the plaintiff involves the constitutionality of said act, and it is contended that the title is not sufficiently broad to cover all of the provisions of said act and is therefore repugnant to sec. 16, art. 3, of the state constitution, wherein it is provided that ''Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title.'' It is contended that the title does not mention or refer to the provision in the body of the act which makes it unlawful for the officers named in said act to appoint or vote for the appointment of any person related to any of his ''associates in office'' within the third degree. As to the main purpose or object of said constitutional provision, see Sutherland on Statutory Construction, sec. 111; Cooley's Const. Lim., 6th ed., p. 178; *Turner v. Coffin*, 9 Ida. 338, 74 Pac. 962; *Katz v. Herrick*, 12 Ida. 1, 86 Pac. 873.

The bill as originally introduced in the Senate contained identically the same title that it did after its amendment, passage and approval by the Governor, except that the last four words of the title, to wit, ''and declaring an emergency,'' were stricken out. The first section of said act was amended by inserting therein the words, ''or to any of his associates in office.'' Other minor amendments were made that are not involved in the questions here presented.

The title to said act is nearly as long as the act itself, and is almost an index of the act. In fact, it contains much more than is required by said constitutional provision as a title to such an act. The following would have been a sufficient title to said act: ''An act prohibiting the appointment to public office of any person related to the officer making the appointment, by affinity or consanguinity within the third degree; prohibiting the exchange of such appointments by

public officers, and prescribing penalties for the violation thereof.'' Such a title would fully express the object and purpose of the act. However, we think the title amply sufficient and not repugnant to the provisions of said section of the constitution. It is broad enough to include that provision of the act which prohibits the appointment of any person related to the officer named or to any of his ''associates in office,'' by affinity or consanguinity within the third degree. We therefore hold that said title is sufficiently broad to cover all of the provisions of said act.

In this case it is conceded that the only reason why said board of trustees has notified the plaintiff that on and after May 8, 1915, the date when said bill becomes effective, her services will no longer be needed, is because she is the daughter of Commandant Barton, who, in the opinion of the board, is ''an associate in office'' of the members of the board, within the meaning of said act.

An ''associate in office'' is one who shares the office or position of authority or responsibility, and not an appointee who does not share the responsibility or authority of the office. ''Associates in office'' are those who are united in action; who have a common purpose; who share responsibility or authority and among whom is reasonable equality; those who are authorized by law to perform duties jointly or as a body. Under the provisions of the law the commandant is an appointee of said board and has entire control and management of the Soldiers' Home under such rules and regulations as may be prescribed by said board, and has no authority or equality with the members of the board in making such rules or regulations or in his own appointment or in the appointment of any other appointee that said board has authority to make. Clearly, he is not an ''associate in office'' as said phrase is used in said act. There is, therefore, no good reason, so far as the record shows, why the plaintiff should not be retained in her present position as matron of the Soldiers' Home, and if the board desires to retain her, it may do so and will not violate any of the provisions of said act.

The phrase "associates in office," as used in said act, refers to officers who are required under the law to act together, for instance, as a board or city council, each having substantially equal authority in matters coming before them as a board or council under the law, and said act was intended to and does prohibit such officers or boards or councils from appointing anyone to office related within the prohibited degree to either or any of such officers who are members of such board or council. But such officers who have independent duties to perform, aside from those coming before them as members of a board or council, are not "associates in office" in the performance of those independent duties. For instance, the Governor has many duties to perform under the law that he must perform independently of any board of which he may be a member or of any associate in office. So with the Secretary of State, the Attorney General and other state, county and municipal officers. Those officers are not "associates in office" of anyone in performing those independent duties where they act independently of any other person or officer.

Said act absolutely prohibits officers who are not "associates in office" from making appointments on "agreement or promise" with other officers. The law thus makes it a penal offense for an officer to appoint one related to another officer within the prohibited degree upon an agreement or promise; and if such person is illegally appointed, the officer of the state, district, county, city or other municipal division who pays out of the public funds under his control, or who draws or authorizes the drawing of any warrant or authority for payment out of the public funds, the salary, pay or compensation of such ineligible person, knowing him to be ineligible, is also guilty of a misdemeanor and may be punished as provided in the first section of said act.

The legislature has thus provided a double check on the appointment by officers of relatives within the prohibited degree. First, it is made a penal offense to appoint such a person, and, second, it is made a penal offense for another officer to pay the salary or compensation of such appointee,

knowing him to be ineligible or illegally appointed. For instance, the law prohibits the trustees or city council of any village or city from employing anyone related within the prohibited degree to any member of such board of trustees or council; or county commissioners from appointing anyone to any position who is related to either of the county commissioners within the prohibited degree. And again: If the sheriff agrees with the assessor, or has an understanding with him that if he will appoint a relative of his (the sheriff) in his office, he will appoint a relative of the assessor under him, such an agreement or understanding is prohibited by said act, and if such things are done, the one who disburses the compensation or salaries to such appointees is made criminally liable if he, knowing of such arrangement, pays such salary or compensation.

However, it was not intended to penalize an officer who pays out of the public funds or who draws or authorizes the drawing of warrants on the public funds or who allows claims for the salary, wages, pay or compensation of other appointees who have been legally appointed, although the officer allowing such claims or drawing the warrant or paying out the funds may be related to such appointee within the prohibited degree. For example: The Governor could appoint as his private secretary a person related within the third degree to the Secretary of State, if there were no agreement or promise such as is mentioned in the first section of said act between the Governor and the Secretary of State, as the Governor has the exclusive right to make such an appointment without the concurrence or assistance of any other officer; and the Secretary of State and the Governor, as members of the board of examiners, are not prohibited by said act from passing upon and allowing the claim of such appointee for salary or wages.

It is next contended that since said act is a police regulation, its provisions are unreasonable and unenforceable, and unconstitutional for that reason, and that it contravenes the provisions of the constitution of the state in that it is an infringement by the legislative department of the distinct

functions of the executive and judicial departments of government and attempts to bind succeeding legislatures in the appointment of its officers; that it limits and tends to destroy the official functions of constitutional officers; that it limits the constitutional rights of officers to appoint qualified persons to, and violates the right of said persons to hold, appointive office; that it forfeits public office and makes persons ineligible for reappointment on the ground of misdemeanor, and that for those reasons it is against public policy and unconstitutional.

We are unable to concur in those contentions, since we believe it to be within the legislative power to prohibit officers from appointing persons to office related to them by affinity or consanguinity, in the interest of efficiency in public service and for the best interests of the people and of the municipal subdivisions of the state, and as a legitimate police regulation, in regard to which the law-making power may legislate, and reasonable legislation in regard thereto is constitutional and enforceable.

Nepotism is recognized as an evil that ought to be eradicated and stamped out, and we know of nothing in the state constitution that prohibits the legislature from passing reasonable regulations in regard thereto.

Since said act prohibits officers from appointing or voting for the appointment of any person related to them by affinity or consanguinity within the third degree, the question is presented as to under what law the degrees of relationship must be computed; that is, whether under the canon or common law, or under the Roman or civil law.

Under the provisions of sec. 5705, Rev. Codes, the degrees of kindred are computed according to the rules of the civil law and not the common law. That is the rule established in this state. It is evident that the legislative intent was to have the degrees of kindred under the act in question computed under the civil law. In computing degrees of affinity and consanguinity the civil law is generally followed in all the states of the Union. (4 Kent's Commentaries, 14th ed., bottom p. 473.)

If the degrees of relationship were to be computed under the rules of the canon or common law, it would place the officer who is required to appoint a deputy or other officer in a very embarrassing and dangerous position, since under the rules of the common law the third degree of relationship exists between the public officer and all children, grandchildren and great-grandchildren of the great-grandfathers and great-grandmothers of such public officer. It might require experts in geneology to trace the degree of relationship between an officer appointing and the appointee in order to protect the officer from the penal provisions of the act in question. Under the civil law, it is an easy matter to determine who come within the third degree of relationship by affinity or consanguinity. Under the act in question an officer cannot appoint the following relatives of either himself or his wife: Parents, grandparents and great-grandparents; uncles and aunts; brothers and sisters; children, grandchildren, great-grandchildren; nephews and nieces. The following diagram may make the matter a little clearer:

Opinion of the Court—Sullivan, C. **J.**

It will be observed from the above that cousins do not come within the prohibited third degree.

We hold that under said act, in determining the degrees of relationship, the civil law must be followed.

The next question presented is whether said act affects appointments made prior to its becoming operative or prior to its going into effect, and was it intended that the act should operate retrospectively?

The first section of said act provides that any of the officers therein named "who appoints or votes for the appointment of any person related to him," etc., is "guilty of a misdemeanor involving official misconduct, and upon conviction thereof shall be punished by fine . . . . and shall forfeit his office and be ineligible for appointment to such office for one year thereafter." The legislature by using that language evidently did not intend to make an official guilty for acts done prior to the date of said act that were not crimes at the time said acts were done, and the language, "who appoints or votes for the appointment of a person related to him," clearly indicates that the legislature did not intend to make said act retrospective or *ex post facto*. If it did so intend, the law would be absolutely void for attempting to make an act a crime when it was not a crime at the time the act was performed. *Ex post facto* laws are prohibited by sec. 16, art. 1, of the constitution of this state and are also prohibited by the provisions of the constitution of the United States. Nor is there anything in the title of the act that would indicate that the legislature intended that the act should have a retroactive effect.

However, sec. 2 of said act provides that any officer therein named who "pays out of any public funds under his control or who draws or authorizes the drawing of any warrant or authority for the payment out of any public funds of the salary, wages, or compensation of any such ineligible person, knowing him to be ineligible, is guilty of a misdemeanor and shall be punished as provided in section 1 of this act." Taking into consideration the purview of said act, it is clear that the legislature did not intend that any ineligible ap-

pointee should receive or draw any pay from the public funds after said act had gone into effect, even though he had been appointed prior to the going into effect of said act. The court having arrived at that conclusion, the appointees referred to cannot legally draw or be paid out of the public funds any salary or wages for services rendered subsequent to the going into effect of said act, to wit, the 8th day of May, 1915. Therefore all officers referred to in said act should see to it that their appointees are eligible under the provisions of said act from the date said act goes into effect.

Several questions are involved or arise in the practical application of this law, and owing to the numerous officials who are vitally interested in the construction to be placed upon this act, we will suggest a few of those questions and the conclusion of the court upon them.

First, is the head of one department of the state, county or city government liable if he appoints to office a person related within the prohibited degree to the head of another department? The head of one department is not liable under said law for the appointments made by the heads of other departments where he is not an "associate in office" and cannot, under the law, participate in such appointment.

The next question is: If an appointee of one department of the state, county or city government is related within the prohibited degree to a member of the state board of examiners or the board of county commissioners or the city council, can such boards approve a claim for such appointee's salary without rendering themselves liable under the provisions of the second section of said act?

Since the head of one department cannot control the appointments of another department, the board which is called upon to allow the claims of appointees is not liable under the provisions of said section for allowing claims of appointees who have been legally appointed, although such appointees may be related within the prohibited degree to a member of the board or person who allows or pays such claims.

The next question is: Is it permissible under the provisions of said act for certain members of a board, such as, for in-

stance, the board of county commissioners, city council or trustees of a village, without the concurrence of the third member, to appoint to office a person related within the prohibited degree to such third member?

The clear intention of the law was to prohibit such appointments, for if by collusion or agreement two members of a board were to appoint to office a person related to the third member within the prohibited degree, it would be a very easy matter to evade the provisions of said law where appointments were to be made by boards. Such appointments are prohibited. This applies equally to all state boards and all other boards of municipal subdivisions of the state, since the members of said boards, when acting as boards are "associates in office."

The next question is: Are school districts, irrigation, drainage and improvement districts included within the provisions of said law?

It will be observed from the title that it applies to municipal subdivisions of the state and the first section of said act is in part as follows: "That executive, legislative, judicial, ministerial or other officer of this state or of any district, county, city, or other municipal subdivision of the state, including road districts," etc. The title as well as the body of the act clearly indicates that it was intended to apply to municipal subdivisions of the state and also to road districts. The act having especially enumerated only one subdivision, to wit, a road district, that is not a municipal subdivision, all other subdivisions of the state which are not municipal subdivisions are excluded, hence it does not apply to school districts, irrigation districts, drainage districts or improvement districts, since they are not municipal subdivisions of the state. This court held in *Fenton v. Board of Commrs.*, 20 Ida. 392, 119 Pac. 41, that a school district is not a municipal corporation within the meaning of sec. 6, art. 7, of the constitution. Said act is only intended to apply to municipal subdivisions of the state and road districts.

This proceeding was brought for the purpose of obtaining from this court the proper construction to be placed upon

Points Decided.

the several provisions of said anti-nepotism act.  No question has been raised in regard to the power and authority of the board to discharge the petitioner without giving any reason for such discharge, but it is conceded that the board does not desire to discharge her at the present time, at least, unless under the provisions of said act they would be guilty of a misdemeanor and become liable under the penal provisions of said act if they retained her after said act goes into effect.

As we view it, it will not be necessary for this court to direct the peremptory writ of prohibition to issue, since we hold that the defendants, as a board of trustees of the Soldiers' Home, may retain the plaintiff as matron of the Soldiers' Home, if they desire to do so, and by so doing they will not violate any of the provisions of said anti-nepotism act.

No costs are allowed in this case.

Budge and Morgan, JJ., concur.