(No. 6092. April 28, 1934.)

J. C. PENNEY COMPANY, a Corporation, Appellant, v. BEN DIEFENDORF, Commissioner of Finance of the State of Idaho, and B. H. MILLER, Attorney General of the State of Idaho, Respondents.

[32 Pac. (2d) 784.]

376

Hoyt E. Ray and Frawley and Barnes, for Appellant.

B. H. Miller, Attorney General, Leo M. Bresnahan, Assistant Attorney General, and Richards and Haga, for Respondents.

WERNETTE, J.—Appellant instituted this action to enjoin the enforcement of chapter 113, Idaho Session Laws, 1933, commonly known as the ''Chain Store Tax Law.'' In its complaint it challenged the constitutionality of the act, alleging that it not only violates the Fourteenth Amendment to the federal Constitution, but also various provisions of the Idaho Constitution.

Respondents filed a general and special demurrer to appellant's complaint, which general demurrer was sustained by the lower court on the ground that the complaint failed

to state facts sufficient to constitute a cause of action. Appellant refusing to plead further, judgment was entered by the lower court dismissing the action, from which this appeal is prosecuted.

Appellant is a foreign corporation authorized to do business within the state of Idaho. During the time in question it was engaged in the business of selling dry-goods, clothing and general merchandise at retail in a chain of thirty stores located in thirty cities in the state. The business so owned and conducted by appellant was under one management, control and superintendence. It had invested in business in the state of Idaho the sum of $650,985.24, and during the year of 1932 the annual sales of the business for thirty-one stores within the state, one of which had been closed at the time of the institution of this action, totalled the sum of $2,589,137.79. The appellant, in 1932, had 364 employees within the state and a pay-roll of $222,665.72. In only three instances did it own the buildings in which it conducted its stores, while the other twenty-eight stores were conducted in rented properties, it having paid rental for the same, during the year of 1932, the sum of $62,743.23.

The act under consideration, in general, provides for the requiring of licenses for the operation, maintenance or establishment of stores within the state, prescribing the license and filing fees to be paid therefor, and providing that there may be offset against such license fees all taxes paid on real property or improvements thereon in the state of Idaho owned and used in connection with the business of the person or company conducting the same, upon which is imposed the license fees under the act.

The appellant particularly attacks the constitutionality of the act with reference to sections 5, 5–A, 7 and 8, which read as follows:

"Sec. 5. ANNUAL LICENSE FEES. — Every person, firm, corporation, association or co-partnership opening, establishing, operating or maintaining one or more stores or mercantile establishments within this state, under the same general management, supervision or ownership, shall pay the

license fees hereinafter prescribed, for the privilege of opening, establishing, operating or maintaining such stores or mercantile establishments.

"The license fee herein prescribed shall be paid annually, and shall be in addition to the filing fee prescribed in sections two (2) and four (4) of this Act.

"The license fees herein prescribed, shall be as follows:

"1. Upon one store the annual license fee shall be five dollars for each such store;

"2. Upon two stores the annual license fee shall be ten dollars for each such store;

"3. Upon three stores the annual license fee shall be twenty dollars for each such store;

"4. Upon four stores the annual license fee shall be thirty-five dollars for each such store;

"5. Upon five stores the annual license fee shall be fifty-five dollars for each such store;

"6. Upon six stores the annual license fee shall be eighty dollars for each such store;

"7. Upon seven stores the annual license fee shall be one hundred ten dollars for each such store;

"8. Upon eight stores the annual license fee shall be one hundred forty dollars for each such store;

"9. Upon nine stores the annual license fee shall be one hundred seventy dollars for each such store;

"10. Upon ten stores the annual license fee shall be two hundred dollars for each such store;

"11. Upon eleven stores the annual license fee shall be two hundred thirty dollars for each such store;

"12. Upon twelve stores the annual license fee shall be two hundred sixty dollars for each such store;

"13. Upon thirteen stores the annual license fee shall be two hundred ninety dollars for each such store;

"14. Upon fourteen stores the annual license fee shall be three hundred twenty dollars for each such store;

"15. Upon fifteen stores the annual license fee shall be three hundred fifty dollars for each such store;

"16. Upon sixteen stores the annual license fee shall be three hundred eighty dollars for each such store;

"17. Upon seventeen stores the annual license fee shall be four hundred ten dollars for each such store;

"18. Upon eighteen stores the annual license fee shall be four hundred forty dollars for each such store;

"19. Upon nineteen stores the annual license fee shall be four hundred seventy dollars for each such store;

"20. Upon each store in excess of nineteen the annual license fee shall be five hundred dollars for each such store."

"Sec. 5-A. OFFSET OF TAXES ON REAL PROPERTY AND IMPROVEMENTS THEREON. That any person, firm, corporation, copartnership or association, upon which any license fee is imposed under this Act, hereafter in this section called 'licensee', shall have the right to offset against such license fees all taxes paid by such licensee upon real property or improvements thereon, situated in the State of Idaho owned and used by such licensee in connection with its business; and the official receipts, or certified copies or duplicates thereof, shall be accepted for the full amount of such taxes, as shown paid thereby, by the Commissioner of Finance, who shall credit the same upon the license fees imposed under this Act upon such licensee; providing that such official receipts, or copies or duplicates thereof, shall not be accepted by the Commissioner of Finance unless they show that such taxes were paid within eight months of the presentation thereof for application upon such license fees."

"Sec. 7. PARTIES TO WHICH ACT APPLIES: The provisions of this Act shall be construed to apply to every person, firm, corporation, association or co-partnership, either domestic or foreign, which is controlled or held with others by a majority stock ownership or ultimately controlled or directed by one management or association of ultimate management. Provided, however, that this Act shall not apply to gasoline filling stations and/or gasoline distributing plants handling gasoline or other petroleum products exclusively."

"Sec. 8. DEFINITION OF TERM 'STORE'.—The term 'store' as used in the Act, shall be construed to mean and include any store or stores, or any mercantile establishment or establishments which are owned, operated, maintained, or controlled by the same person, firm, corporation, copartnership or association, either domestic or foreign, in which goods, wares or merchandise of any kind are sold, either at retail or wholesale. Provided, however, that the term 'store' shall not mean and/or include gasoline filling stations and/or gasoline distributing plants handling gasoline and other petroleum products exclusively."

Before proceeding with a discussion of the specific questions raised, it may be stated that appellant concedes that the tax referred to in the act in question is an excise tax for revenue purposes. Further, that the legislature has the power to classify for the purpose of levying excise taxes, subject only to the limitations later discussed; and that chain stores may be placed within a separate class for the purpose of levying an excise tax, pursuant to the law as laid down in *State Board of Tax Commrs. v. Jackson*, 283 U. S. 527, 51 Sup. Ct. 540, 75 L. ed. 1248, 73 A. L. R. 1464. In the consideration and discussion of the various provisions of the act in question the statement of Mr. Justice Roberts in the opinion of *State Board of Tax Commrs. v. Jackson, supra,* is quite apt, where, in upholding the Indiana chain store tax law, the following was said:

"It is not the function of this court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great."

In considering the statute to be passed on it is also to be kept in mind, as a fundamental principle of law, that the court in construing a statute must adopt such construction as will sustain its constitutionality if such construction is reasonably possible. (*Williams v. Baldridge*, 48 Ida. 618,

284 Pac. 203; *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149; *Achenbach v. Kincaid,* 25 Ida. 768, 140 Pac. 529.)

■ Appellant first challenges the constitutionality of sections 7 and 8, above quoted, which exclude gasoline filling stations or gasoline distributing plants handling gasoline or other petroleum products exclusively from the act, contending that such classification creating an exemption is arbitrary and unreasonable and therefore violative of section 5, article 7, of the Idaho Constitution. Further, that by excluding gasoline filling stations from the tax, there being no reasonable basis for such exclusion, a clear and hostile discrimination against particular persons and classes is made in direct violation of the Fourteenth Amendment to the federal Constitution and section 13, article 1, of the Idaho Constitution. The provisions contained in sections 7 and 8 of the act excluding, by classification, gasoline filling stations need not necessarily come within the usual rules of law applicable to exemptions from taxation. Such provisions are in the nature of legislative construction of the classification for taxation purposes intended to be made by the act itself. A gasoline filling station may. or may not be subject to the tax, depending upon the fact as to whether such a station is operated in connection with, or as a part of a store or mercantile establishment as defined by the provisions of this law.

Section 70–113, I. C. A., among other things, provides:

"Words and phrases are construed according to the context and approved usage of the language. . . . . "

In construing section 8, above quoted, the language used by the Wisconsin supreme court in *Wadhams Oil Co. v. State,* 210 Wis. 448, 245 N. W. 646, (on motion for rehearing) 210 Wis. 457, 246 N. W. 687, is much in point:

"There are many places where goods, wares and merchandise of some kind are kept for sale which would not be understood, according to the common and approved usage of the language, to be stores or mercantile establishments. Among these might be enumerated tailor shops, shoe-shining parlors, wood yards, lumber yards, coal yards, brick yards,

stone quarries, news stands, fruit stands, flower stands, cheese factories, restaurants, hotels, and no doubt others. On many farms farm produce is kept for sale at retail and many small manufacturers maintain retail departments as a part of their business. The same argument which supports the conclusion reached in the brief that a gasoline filling station is a store would support the conclusion that a brick yard is a store. It is a place where goods, wares, and merchandise are kept for sale at retail. No one could reasonably argue that the Legislature used the term 'store or mercantile establishment' in any such wide, comprehensive and unrestricted sense. No one has yet pointed out that according to the common and approved usage of the language the term 'store' or 'mercantile establishment' has ever been applied to a gasoline filling station. In thus interpreting the language of the statute, we follow the command of the Legislature. This statutory provision with respect to construction merely adopts the rule universally applied by courts."

Appellant argues, however, that the very fact that in section 8, in which is defined the term "store," it is provided that gasoline filling stations should not come within such term, it is obvious that the legislature had in mind that gasoline filling stations, under the definition, were "stores." It does not appear to us that such an inference can be logically drawn from the provisions, as contended for, rather that the legislature had in mind that gasoline filling stations are not "stores" as the term is generally and ordinarily used and understood, and in order to avoid any question such as arose in the Wisconsin case, where filling stations were not specifically excluded, specific provision was made to exclude the same from the classification of stores. The reasoning used by the Wisconsin court seems most persuasive and logical. No one would contend that if a person was asked to stop at the first store on the right-hand side of a business street in the city, that such party would stop at a shoe-shining parlor. Yet such a parlor might sell some shoe strings and shoe polish, all of which might be considered as goods, wares and merchandise. See the very recent case of *Standard Oil Co.*

*of New Jersey v. Fox,* (U. S. D. C., S. D., W. Va.) 6 Fed. Supp. 494, decided March 1, 1934, following the Wisconsin rule and giving the most cogent reasons why gasoline filling stations should not be included within the classification of general commodity chains. But considering the provision excluding gasoline filling stations, as creating a classification thereby granting an exemption, we believe such classification is absolutely justified and valid under the authorities.

South Carolina has a Chain Store Tax Law very similar to ours. The South Carolina act, among other things, provides: "That the tax here imposed shall not apply to gasoline filling stations." In the Idaho act, as set forth in sections 7 and 8 thereof, it is provided that the act shall not apply to gasoline filling stations "handling gasoline or other petroleum products exclusively." In *Southern Grocery Stores v. South Carolina Tax Com.,* 55 Fed. (2d) 931, the South Carolina act was in question, it being contended that the exempting of gasoline filling stations from the tax was an unreasonable and arbitrary classification. The court had this to say:

"There can be no question, we think, but that the exemption of gasoline filling stations from the tax rests upon a reasonable classification. Such stations as a general rule sell only gasoline and other articles of merchandise upon which the state collects a heavy excise tax, and it was doubtless for this reason that they were exempted from the tax in question. Furthermore, such filling stations are quite distinct from ordinary stores or mercantile establishments. Of course, if the operator of a filling station should operate a store or mercantile establishment in connection therewith, such stores would unquestionably be subject to the tax prescribed by the statute."

In the very recent case of *Liggett Co. v. Lee,* 288 U. S. 517, 53 Sup. Ct. 481, 77 L. ed. 929, 85 A. L. R. 699, the supreme court of the United States recognized and approved the right of such an exemption by classification. In that case a law of Florida imposed a tax of six cents per gallon on gasoline and other like products of petroleum sold, and for which the tax therein provided had not been paid or

the payment therein had not been assumed by the person preceding the dealer in the handling of said products, and in addition thereto every dealer was required to pay a license fee of $5 to the state under chapter 15,659, Laws of Florida, Acts of 1931, (Ex. Sess.) and under the provisions of chapter 15,988, Acts of 1931, a general tax of one cent per gallon was imposed, making a total of seven cents per gallon. It affirmatively appears from the Florida law that such tax was not strictly a tax imposed upon the dealer, but was a tax to be passed on to the consumer, as most excise taxes generally are. So that the principle upon which the tax was sustained was that the sale of gasoline was already carrying a heavy burden of taxation. In upholding the law, as to the classification which exempted gasoline stations, the court said:

"It has long been settled that the Fourteenth Amendment does not prevent a state from imposing different taxes upon different trades and professions or varying the rates of excise upon various products. . . . . Clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, may be obnoxious to the Constitution, but in view of the imposition of taxes on the operation of filling stations by other acts, pursuant to the legislature's power of classification, we cannot declare their exemption from the tax laid by the chain store act offensive to the guaranties of the Fourteenth Amendment."

It seems that Justice Duncan in his dissenting opinion in *Winter v. Barrett,* 352 Ill. 441, 186 N. E. 113, 89 A. L. R. 1398, grasped the full import of the holding in *Liggett Co. v. Lee, supra,* when he said:

"It was held that the fact that by other laws of Florida all dealers in gasoline were required to pay a license tax and a tax of 7 cents a gallon for every gallon of gasoline or other like products of petroleum sold furnished a sufficient basis for the exemption. . . . . The General Assembly had the right to take into consideration the generally recognized fact that the burden of a tax imposed on persons in business, measured by their receipts from sales, would ultimately

be borne, as a practical matter, by the consumer, and to exclude receipts from sales of motor fuel from the receipts on which the tax is based because of the tax already imposed on the consumer of motor fuel.''

In *Magoun v. Illinois Trust & Sav. Bank,* 170 U. S. 283, 18 Sup. Ct. 594, 42 L. ed. 1037, which involved a number of deductions and exemptions under the Inheritance Tax Act of Illinois, the following rule was announced:

''The first and second cases, therefore, of the statute depend on substantial distinctions and their classifications are not arbitrary. Nor do the exemptions of the statute render its operation unequal within the meaning of the 14th Amendment. 'The right to make exemptions is involved in the right to select the subjects of taxation and apportion the public burdens among them, and must consequently be understood to exist in the lawmaking power wherever it has not in terms been taken away. To some extent it must exist always; for the selection of subjects of taxation is of itself an exemption of what is not selected.' Cooley Taxn. 200. See, also the remarks of Mr. Justice Bradley in *Bell's Gap R. R. Co. v. Pennsylvania* (134 U. S. 232, 10 Sup. Ct. 533, 33 L. ed. 892), *supra.*''

We likewise call attention to the following language of Mr. Justice Roberts in *State Board of Tax Commrs. v. Jackson, supra:*

''The principles which govern the decision of this cause are well settled. The power of taxation is fundamental to the very existence of the government of the states. The restriction that it shall not be so exercised as to deny to any the equal protection of the laws does not compel the adoption of an iron rule of equal taxation, nor prevent variety or differences in taxation, or discretion in the selection of subjects, or the classification for taxation of properties, businesses, trades, callings, or occupations. (*Bell's Gap R. R. v. Pennsylvania,* 134 U. S. 232, 10 Sup. Ct. 533, 33 L. ed. 892; *Southwestern Oil Co. v. Texas,* 217 U. S. 114, 30 Sup. Ct. 496, 54 L. ed. 688; *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 30 Sup. Ct. 578, 54 L. ed. 883.) The fact that a statute discriminates in favor of a certain class does not

make it arbitrary, if the discrimination is founded upon a reasonable distinction (*American Sugar Refining Co. v. Louisiana,* 179 U. S. 89, 21 Sup. Ct. 43, 45 L. ed. 102), or if any state of facts reasonably can be conceived to sustain it. (*Rast v. Van Deman,* 240 U. S. 342, 36 Sup. Ct. 370, 374, 60 L. ed. 679, Ann. Cas. 1917B, 455, L. R. A. 1917A, 421; *Quong Wing v. Kirkendall,* 223 U. S. 59, 32 Sup. Ct. 192, 56 L. ed. 350.) As was said in *Brown-Forman Co. v. Kentucky, supra,* at page 573 of 217 U. S., 30 Sup. Ct. 578, 580: 'A very wide discretion must be conceded to the legislative power of the state in the classification of trades, callings, businesses, or occupations which may be subjected to special forms of regulation or taxation through an excise or license tax. If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' ''

And see *South Carolina Power Co. v. South Carolina Tax Com.,* 52 Fed. (2d) 515, involving exemptions under the Kilowatt Tax Law.

In construing the Idaho act, giving the language its usual and ordinary meaning, there is nothing arbitrary or unreasonable as to the classification excluding gasoline filling stations therefrom, and there is no merit in appellant's contention that there is created a discrimination by the act between filling stations themselves, as all parties similarly situated are treated alike. The rule to be applied is aptly illustrated in *Warburton-Beacham Supply Co. v. City of Jackson,* 151 Miss. 503, 118 So. 606, wherein the construction of a statute of the state of Mississippi was involved, which levied a privilege tax upon the plumbing business and a further tax upon each store. The court there said:

''One who keeps a store, the stock of which consists of general merchandise, including plumbing fixtures, and who also takes contracts for plumbing, using material therefor from his stock of goods, would be engaged both in keeping a store and in the plumbing business, and there is no difference in principle from that supposed case and the one at bar.''

This court has specifically held that the legislature has the right and power to classify for taxation purposes, and in so classifying make exemptions. In *Diefendorf 'v. Gallet*, 51 Ida. 619, 642, 10 Pac. (2d) 307, 316, this court said:

"The state has the power to classify for the purposes of taxation, only limited by the rule that the classification must be reasonable and founded' upon differences between the parties. The equality clause does not forbid reasonable classification. Discrimination through classification is said to violate that clause only where it is such as 'to preclude the assumption that it was made in the exercise of legislative judgment and discretion.' (*Stebbins v. Riley*, 268 U. S. 137, 45 Sup. Ct. 424, 69 L. ed. 884, 44 A. L. R. 1454.)"

We have a similar law to that of Florida, being chapter 46, Session Laws, 1933, imposing an excise tax of five cents per gal.on on all motor fuels, which tax is passed on to the consumer, so that here as in Florida gasoline is already carrying a heavy burden of taxation. We are firmly convinced, and hold, that sections 7 and 8 are not invalid as violative of constitutional provisions as contended by appellant.

Appellant next assails section 5–A of the act, which provides: "All taxes paid by such licensee upon real property or improvements thereon, situated in the State of Idaho owned and used by such licensee in connection with its business" may be offset against the license fee. .It is contended by appellant that said provision is in violation of sections 2 and 5, of article 7, of the Idaho Constitution; that by reason of section 5–A of the act the legislature seeks to favor those who operate stores upon premises they own and use in the operation of the business, and for that reason is arbitrary and unreasonable.

It is to be borne in mind that a license or excise tax is not a tax on "property" within the provision requiring "property" to be taxed uniformly by value, sections 2 and 5, article 7, Constitution of Idaho, as was decided by this court in *Diefendorf v. Gallet, supra*. (See, also, *In re Kessler*, 26 Ida. 764, 146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322; *Williams v. Baldridge*, 48 Ida. 618,

284 Pac. 203; *Achenbach v. Kincaid,* 25 Ida. 768, 140 Pac. 529; *Crom v. Frahm,* 33 Ida. 314, 193 Pac. 1013; *Stebbins v. Riley,* 268 U. S. 137, 45 Sup. Ct. 424, 69 L. ed. 884, 44 L. R. A. 1454.)

Appellant's contention that the exemption allowed by section 5–A is arbitrary, unreasonable and unjust cannot be upheld. Said provision of the act, exempting by classification, is not discriminatory for the reason that all persons, firms or corporations owning real estate or improvements, as provided by this section, have the same right of offset; it clearly comes within the rule of uniformity. If the appellant has acquired real estate and bears its just proportion of that form of taxation it has the same right as anyone else to the credit allowed by the provision. Under the laws of this state now in force taxes on property are deductible in determining the valuation of inheritance under the State Inheritance Tax Act, section 14–402, I. C. A.; taxes on property are deductible both to individuals and corporations under the State Income Tax Act, sections 61–2413 and 61–2429, as amended, I. C. A. They are all excise taxes. They are taxes levied for certain privileges. The same rules and fundamental principles of taxation apply to each of these taxes and they cannot be distinguished with reference to the right of exemption, classification or uniformity. (*Diefendorf v. Gallet, supra.*)

In *Moore v. State Board of Charities and Corrections,* 239 Ky. 729, 40 S. W. (2d) 349, involving the construction of an act involving a tax based upon the amount of gross sales, it was provided that should any retail merchant be liable and pay any special state license, excise, occupation, corporation or license tax under the laws then in force or that might thereafter be enacted, credit should be taken in the tax levied for the amount of such special license, excise, occupational or corporation license tax so paid, not to exceed the amount of the license or excise tax levied under the provisions of the law. In construing the act the court said:

"The fact that the credits which small merchants are authorized to take may result in their having no tax to pay

under this act does not work a denial of the equal protection of the laws. These credits are open to all who have special license, excise, or occupational taxes to pay. The large merchant gets credit exactly as does the small merchant. The tax of the large merchant is reduced exactly as is the tax of the small merchant. The complaint that the small merchant may by his credits escape paying any gross sales tax is really, when analyzed, the complaint that under the graduated tax the large merchant is taxed more in proportion to his gross sales than is the small merchant. To that complaint, we will presently address ourselves. Those who have no special license, excise, or occupational taxes to pay and no corporation license tax to discharge have no just complaint if those who do have such taxes to pay are given credit for them against their gross sales. This puts no added burden upon those who do not have to pay special license, excise, occupational, or corporation license taxes. It simply tends to make competition fairer as between them and those who have such taxes to pay, since, in the last analysis, such taxes fall as a burden upon the gross sales.''

In *Ludlow-Saylor Wire Co. v. Wollbrinck*, 275 Mo. 339, 205 S. W. 196, cited with approval in *Diefendorf v. Gallet, supra*, such classification for exemption is permissible for the reason that the persons paying the real estate tax occupy a relation of support to the state, reasonably distinguishable from the others who do not pay such tax. The court there stated:

''The Legislature might well create a class consisting of persons whose income taxes exceeded those paid on their real and personal property, for the reason that persons belonging to such a class occupy a relation of support to the state reasonably distinguishable from others who pay taxes only on their incomes. Hence, by taxing the former to the extent their income taxation exceeded their property taxation, the Legislature intended to distribute with greater equality and justice the different burdens imposed on the whole body of taxpayers, and designed also to encourage and foster the payment of taxes on tangible and specific

property by assigning such taxpayers to a distinct class in the imposition of income taxes, that being a subject of taxation within the control of the Legislature, except that, in any event, a tax on income must bear equally upon every person belonging to the same class. This equality of burden, among the members of any of the different classes recognized in the act, applies to those forming the class designated in section 32 of the act under review.''

A statute of the state of Oklahoma imposed a tax upon the gross production of minerals, different rates applied for different minerals produced, and it was provided further that the payment of such taxes should be in lieu of payment of all other taxes on such property and, '' . . . . upon the machinery, appliances and equipment used in and around any well . . . . and actually used in the operation of such well or mine.'' Said act was sustained in *In re Gross Production Tax of Wolverine Oil Co.,* 53 Okl. 24, 154 Pac. 362, L. R. A. 1916F, 141. We think that the analysis of the court in sustaining the act might well apply in this case as showing a reasonable distinction between those who operate stores on real property owned, as compared with those who rent, in that the property and improvements used and owned in connection with the business contribute directly to the establishment and conducting of the particular store from which its revenue is derived, and by deducting the real estate tax paid on such property indirect double taxation is avoided. In *In re Gross Production Tax of Wolverine Oil Co., supra,* the court had this to say:

''It has been said that classification for taxation is not necessarily based upon any essential difference in the nature of the various subjects. It may be based as well upon the want of adaptability to the same methods of taxation, or upon the impracticability to the same methods of taxation, or upon the impracticability of applying to the various subjects the same methods so as to produce just and uniform results, or it may be based upon just and well-grounded considerations of public policy. (Judson on Taxation, pp. 563, 564, 592.) The power of the state to distinguish, select, and classify objects of taxation has a

wide range of discretion. The classification must be reasonable, but there is no precise rule of reasonableness, and there cannot be an exact exclusion or inclusion of persons and things.''

Tax exemptions are of two kinds, they may either be express or by intentional or accidental omission. (2 Cooley on Taxation, 4th ed., sec. 651, p. 1369.) 'Cooley also definitely states the rule to be that exemptions may be based upon ownership or use of property. (2 Cooley on Taxation, p. 1421.) In *Pacific Exp. Co. v. Seibert*, 142 U. S. 339, 13 Sup. Ct. 250, 35 L. ed. 1035, a distinction for taxing purposes, between express companies owning their own means of transportation and those who engaged for hire a railroad or steamship company to transport their merchandise was upheld.

The legislature, with its knowledge of state affairs, may properly have reached the conclusion that owners of real property have been bearing the greater portion of the tax burden. It is for the legislature to determine the tax policy of the state, subject only to the limitations prescribed by the Constitution. As heretofore stated, with reference to exemptions by classification, the legislature has plenary power, limited only that they shall not be unreasonable and arbitrary. The Minnesota court well said in *Home Building & Loan Assn. v. Blaisdell*, (Minn.) 249 N. W. 893, affirmed by the United States supreme court in 290 U. S. 398, 54 Sup. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481:

''The members of the legislature come from every community of the state and from all walks of life. They are familiar with conditions generally in every calling, occupation, profession and business in the state. Not only they, but the courts must be guided by what is common knowledge.''

Appellant is not legally discriminated against, for if it will acquire real estate and bear its just proportion of that form of taxation it has the same right to the exemption as anyone else has to the credit allowed by this law. The legislature has the right to encourage the acquiring and ownership of real estate on the part of those who are con-

ducting stores within the state. The very fact that appellant is the owner of but three pieces of real property on which it has three stores, out of a total of thirty which it is conducting, is quite convincing proof in itself that there must be a substantial difference between owning property and renting it where the business is being conducted. In the companion case of *Safeway Stores v. Diefendorf,* argued and submitted to this court for decision upon the same briefs as in the instant case, and which will have to be decided upon the authority of this case, the Safeway Company is operating forty-eight stores in the state, but in only one instance out of the forty-eight does it own the real property. It seems rather significant that these large companies operating chain stores do not care to own the real property on which their business is conducted. Naturally, there must be a reason for it and a decided advantage in their favor, otherwise they would own the real property on which they conduct their stores. And the legislature may have taken cognizance of facts of this nature in making the distinction or classification. We cannot say that by their paying rent on the real property that such payment is, in effect, the indirect payment of the taxes, as the amount of payment as rent for the privilege of using real property suitable for store purposes may or may not be commensurate with the amount of tax on such property. Questions as to real estate taxes, upkeep, insurance, general depreciation, fluctuations in real estate values and others are proper considerations for the legislature, not for the court.

We believe ample reasons have been set forth fully justifying the legislature in its classification for exemption, and there may have been other reasons in their mind not mentioned, which prompted them. We cannot say that the classification for exemption provided by section 5–A is unreasonable, unjust or discriminatory. We believe that the Idaho authorities heretofore cited fully support this position, which is in harmony with the federal authorities. The federal attitude toward the rights and powers of the state to promulgate and adjust its system of taxation is clearly set forth in *Bell's Gap R. R. Co. v. Commonwealth of*

*Pennsylvania,* 134 U. S. 232, 10 Sup. Ct. 533, 33 L. ed. 892, as follows:

"The provision in the fourteenth amendment, that no state shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a state from adjusting its system of taxation in all proper and reasonable ways. It may, if it chooses, exempt certain classes of property from any taxation at all, such as churches, libraries and the property of charitable institutions. It may impose different specific taxes upon different trades and professions, and may vary the rates of excise upon various products; it may tax real estate and personal property in a different manner; it may tax visible property only, and not tax securities for the payment of money; it may allow deductions for indebtedness, or not allow them. All such regulations, and those of like character, so long as they proceed within reasonable limits and general usage are within the discretion of the state legislature, or the people of the state in framing their constitution."

Appellant further contends that the real property offset provided by section 5–A, above quoted, is invalid because of uncertainty and vagueness, in that there is no power, right or duty of inquiry given the commissioner of finance; that he must accept the naked official receipt and credit the same upon the license fee; that there is no means for determining what portion of the property is used by the licensee in connection with his business; that the court takes judicial knowledge of the fact that real estate assessments in this state are made by legal subdivisions or blocks and lots in municipalities, sec. 61–301, to and including 61–316, I. C. A.; that therefore section 5–A cannot operate because the legislature failed to provide the necessary machinery to put the same into effect.

Appellant did not, in its complaint, allege any facts challenging the act or section 5–A thereof on the grounds of uncertainty and vagueness, nor did the trial court pass on this question. If appellant desired to challenge the legality of the act on the ground of uncertainty and vagueness, it would seem that it would be necessary and proper

to do so by suitable allegations in the complaint, which was not done. But even if appellant were permitted to challenge the act in its brief and by oral argument, without allegations in the complaint, we hold that appellant's contention is without merit.

In *Smallwood v. Jeter, supra,* this court announced the following rule as to the construction to be placed on statutes:

"It is the duty of the court to adopt such construction as will sustain the statute, if its language will permit. Where an act is fairly susceptible of two constructions, one of which will uphold its validity while the other will render it unconstitutional, the former should be adopted."

By applying such rule to the section in question, the intent of the legislature is readily determined, namely: That the commissioner of finance is authorized to accept official receipts for taxes paid by a licensee upon real property and improvements used by the licensee in connection with his business, and allow an offset on the license fee, but that offset is only allowed for the tax paid on the certain property owned and used by the licensee in his business. Section 5-A provides that when official receipts are produced they shall be accepted, but accepted only for the full amount of "such taxes," which term refers only to taxes paid on real property and improvements thereon used by the licensee in connection with his business. There is no uncertainty here as to what taxes shall be offset against the license fee, nor is there anything that can be read from this statute which would require the commissioner to accept official receipts presented covering property not used in the business. And as to the right of inquiry of the commissioner, there is nothing in the statute to prevent the commissioner, if in doubt, to require and accept other proof to determine if the taxes were paid on property owned and used by the licensee in his business. He may also protect himself at any time there may be a reasonable question as to the right of an offset, by refusing to allow the offset or accept the official receipts, and thereby enable the right to be tested in the courts. (61 C. J., sec. 2337.) *Zitron v. City of Milwaukee,* 189 Wis. 599, 208 N. W. 492, the Wis-

consin case therein cited (*Westbly v. Bekkedal*, 127 Wis. 114, 178 N. W. 451), arose under a statute allowing a personal property tax offset on income taxes. A member of a partnership presented a tax receipt issued to the partnership for taxes paid on personal property, contending that he was entitled to his *pro rata* offset for his share for such partnership taxes paid. The court, in passing on the question, made this statement:

"Some contention is made that the city treasurer, being merely an administrative officer, cannot be thus charged with the alleged judicial function of determining questions of ownership that might be thus presented. If there be reasonable grounds to dispute any such assertion, the treasurer can amply protect himself by refusing to accede to such request and having it tested in court, . . . . "

The rule thus announced applies here. By placing the proper construction on this section of the statute the intent is clear and unambiguous, and sufficient procedure is provided as to the manner of collecting the tax. We cannot say that this section is so uncertain, vague and ambiguous as to be inoperative and illegal.

Finally, it is most strenuously urged that the act is invalid because of the alleged prohibitory and retroactive schedule of fees set forth in section 5. There is a difference in the fee schedule of our own act and those of Indiana and Florida, which acts gave rise to the cases of *State Board of Tax Commissioners v. Jackson, supra,* and *Liggett Co. v. Lee, supra.* In the Indiana and Florida acts the fees are graduated and progressive from one store up. In other words, in each classification in those acts, above one store, the increased fee on the additional stores covers only each such additional store in each class, whereas in the Idaho act the increased fee on the additional stores covers each store in the chain. The progressively graduated fees in both the Indiana and Florida acts are very similar to the progressive income taxes exacted under the income tax laws, both federal and state. But the Idaho legislature made a classification based on groups, the fee depending upon the number of units comprising each group. This is

a departure in form from both the Indiana and Florida acts and raises a question not directly presented or decided by the court in the two cases mentioned, where those acts were involved.

In *State Board of Tax Commissioners v. Jackson, supra,* the court found that chain stores, by reason of merchandising methods, are obviously in a class by themselves. The appellant is now operating thirty stores within the state, and the Safeway Company, in the companion case now before us for consideration, is operating forty-eight stores within the state. When it is considered that this large number of chain stores is operated in Idaho with a population of less than 500,000 people, there is but one conclusion to be reached, that is, that they are indeed within a class by themselves, and that there must be a decided advantage in the operation of chain stores to others, otherwise they would not be here. This decided advantage is manifold, as was distinctly pointed out by the court in *State Board of Tax Commissioners v. Jackson, supra.* There is no law in Idaho regulating or fixing the prices for which chain stores are required to sell their products; they are free to sell at any price they wish. Under *State Board of Tax Commissioners v. Jackson, supra,* and *Liggett Co. v. Lee, supra,* the exaction of an excise or license fee is upheld and based on the enjoyment of superior merchandising advantages by many stores under one ownership and under one management, whereby the chain store can undersell its competitors. In all probability the chain store could pass on the excise tax exacted to the consumer and still be able to sell on a par or undersell its competitors. The act does not disclose that there was a legislative intent to make the license fee for operating chain stores so great as to prevent their operation, or render their business unprofitable. The legislature had the right to recognize the superior advantages of chain store operation and make the enjoyment of that privilege extended by the state a producer of revenue for state purposes by means of an excise tax as an incident thereof, to tend to bring about equalization of prices charged by chain stores and those of their competitors, thereby preventing the former from driving the

latter out of business. It is not for the court to say that the legislature was actuated or prompted by an improper motive, nor can we presume it was prompted by one which would place the act in conflict with the Constitution, unless it clearly and convincingly so appears. It does not appear that the excise tax exacted is so great that reasonable profits may not be made in the operation of chain stores, so we cannot say that the law is confiscatory. A vast difference exists between a law which may be unwise and one which is unconstitutional in the particular as here claimed. If the fees charged are so high as to unduly raise the price of merchandise sold by chain stores, thus resulting to the disadvantage of the consuming public, the legislature is answerable for this lack of wisdom to the electorate, not to the courts. If it does not clearly appear that this schedule of fees in question is such that the owners of chain stores will be so greatly handicapped thereby as to make their business unprofitable, while the business of independent operators who handle and sell the same or similar goods may be conducted profitably, such fees cannot be held to be confiscatory. Under article 2 of the Idaho Constitution, the court is not permitted to substitute its judgment for that of the legislature as to the wisdom of the legislation. As stated, there is nothing in the act to indicate that the legislature intended to make the fees so great as to prevent chain stores from operating, or making their business unprofitable, yet it is possible that the legislature had in mind the question of whether this distinct and great advantage which the chain store operator has over others is to the best interest of the state, and it was their privilege to take that factor into consideration. The citizens of each state must still remain the masters of their destiny, and when they speak through their legislatures it is not for the courts to say that such shall not be the policy of that state. Particularly is that true, even though when a revenue measure, if it is for the protection of a basic interest of society and of the state. The principle involved is perhaps best stated in *Home Building & Loan Assn. v. Blaisdell,*

290 U. S. 398, 54 Sup. Ct. 231, 78 L. ed. 413, 88 A. L. R. 1481, where the court said:

"It is manifest from this review of our decisions that there has been a growing appreciation of public needs and of the necessity of finding ground for a rational compromise between individual rights and public welfare. The settlement and consequent contraction of the public domain, the pressure of a constantly increasing density of population, the interrelation of the activities of our people and complexity of our economic interests have inevitably led to an increased use of the organization of society in order to protect the very bases of individual opportunity. Where, in earlier days, it was thought that only the concerns of individuals or of classes were involved, and that those of the State itself were touched only remotely, it has later been found that the fundamental interests of the State are directly affected; and that the question is no longer merely that of one party to a contract as against another, but of the use of reasonable means to safeguard the economic structure upon which the good of all depends.

"It is no answer to say that this public need was not apprehended a century ago, or to insist that what the provision of the Constitution meant to the vision of that day it must mean to the vision of our time. If by the statement that what the Constitution meant at the time of its adoption it means to-day, it is intended to say that the great clauses of the Constitution must be confined to the interpretation which the framers, with the conditions and outlook of their time, would have placed upon them, the statement carries its own refutation. It was to guard against such a narrow conception that Chief Justice Marshall uttered the memorable warning—'We must never forget that it is a constitution we are expounding' (*McCulloch v. Maryland*, 4 Wheat. 316, 407, 4 L. ed. 579)—'a constitution intended to endure for ages to come, and, consequently, to be adapted to the various *crises* of human affairs.' (Id., p. 415.) 'When we are dealing with the words of the Constitution,' said this court in *Missouri v. Holland*, 252 U. S. 416, 433, 40 Sup. Ct. 382, 64 L. ed. 641, 11 A. L. R. 984, 'we must realize that they

have called into life a being the development of which could not have been foreseen completely by the most gifted of its begetters. . . . . The case before us must be considered in the light of our whole experience and not merely in that of what was said a hundred years ago.' "

And again in that case the court said:

"With a growing recognition of public needs and the relation of individual right to public security, the court has sought to prevent the perversion of the clause through its use as an instrument to throttle the capacity of the States to protect their fundamental interests. This development is a growth from the seeds which the fathers planted. It is a development forecast by the prophetic words of Justice Johnson in *Ogden v. Saunders,* 12 Wheat. 213, 6 L. ed. 606, already quoted."

Further, in summing up the case the court made this expression:

"The legislation was addressed to a legitimate end, that is, the legislation was not for the mere advantage of particular individuals but for the protection of a basic interest of society."

And see *Quong Wing v. Kirkendall,* 223 U. S. 58, 32 Sup. Ct. 192, 56 L. ed. 350; *Citizens' Telephone Co. v. Fuller,* 229 U. S. 322, 33 Sup. Ct. 833, 57 L. ed. 1206.

It was never intended by the Fourteenth Amendment to compel the state to adopt an iron rule of equal taxation, it is sufficient if each, within a certain class receive the same treatment. (*Bell's Gap R. R. Co. v. Pennsylvania, supra.*) It has the right to exclude from taxation by way of exemptions the kinds of business which it desires to foster. (*American Sugar Ref. Co. v. Louisiana,* 179 U. S. 89, 21 Sup. Ct. 43, 45 L. ed. 102; *Southwestern Oil Co. v. Texas,* 217 U. S. 114, 30 Sup. Ct. 496, 54 L. ed. 688.) And it has the power to tax more heavily the kinds of business which it wishes to discourage. (*Williams v. Fears,* 179 U. S. 271, 21 Sup. Ct. 128, 45 L. ed. 186; *Armour Packing Co. v. Lacy,* 200 U. S. 226, 26 Sup. Ct. 232, 50 L. ed. 431.) By the oleomargarine laws it has protected and fostered the business of the farmers and dairymen. (*McCray v. United*

*States,* 195 U. S. 26, 24 Sup. Ct. 769, 49 L. ed. 78.) It has favored national banks by eliminating, through prohibitive tax, the issuance of state bank notes. (*Veazie Bank v. Fenno,* 75 U. S. (8 Wall.) 533, 19 L. ed. 482.) If there has been any doubt in the past as to the validity of such legislation it has been put at rest by the decision of the United States supreme court in the case of *A. Magnano Co. v. Hamilton,* 292 U. S. 40, 54 Sup. Ct. 599, 78 L. ed. 1109, decided April 2, 1934. The power of Congress and the state legislature to thus legislate has been continuously upheld by federal and state courts.

Appellant argues that the provisions of section 5 are retroactive. This is not correct under statutory or constitutional construction. The word "retroactive," generally speaking, has reference to the time element involved. A statute which takes away or impairs vested rights acquired under existing laws is retroactive. Construing section 5, time element is not involved for the statute simply means that when an additional store is added to the chain automatically a new classification of the group is created, and not only the additional store but all other stores are taxed on a new basis. This tax in question is a license or privilege tax on store operations. In *Liggett Co. v. Lee, supra,* the court held:

"As we have held, gradation of the tax according to the number of units operated cannot be said to be so unreasonable as to transcend the constitutional powers of the legislature. The addition of a store to an existing chain is a privilege, and an increase of the tax on all the stores for the privilege of expanding the chain cannot be condemned as arbitrary. . . . . "

If the tax may be gradated according to the number of units operated and the addition of a store to an existing chain is a privilege which permits an increase in the tax, the operation of a greater number of stores is a greater use of the privilege which the legislature has seen fit to tax; and an increase in the tax gradated as to groups and the increased use of the privilege cannot be condemned as arbitrary. In other words, if one store may be taxed and

the addition of another store is a privilege, then the two may be separately classified and the tax increased by reason of the greater use of the privilege, and as stores are added, on the same principle, they may be separately classified. The same principle was upheld in *Standard Oil Company of New Jersey v. Fox, supra.* It is not for the court to legislate where the increase should begin or cease.

The expanding of the chain is obviously advantageous or the expansion of chains, throughout the country would not have progressed. When one store is added the reaction is the same upon all of the stores. The advantages of all sorts of so-called chain store merchandising methods are equally applicable to all of the stores even though the chain is expanded by only one store. Otherwise, manifestly, such expansion would not be advantageous. With the advantages of chain store merchandising affecting every store by reason of the privilege of expanding by one or more stores, it cannot be said that the legislature was unreasonable in increasing the tax upon all stores in the chain for the privilege of such expansion. In *Penny Stores v. Mitchell,* 59 Fed. (2d) 789, a similar question as here involved was before the court, and the court there said:

"The argument is that in this case the complainants have introduced experts, who have given positive and undisputed testimony, based upon facts and not theories, and that from this undisputed testimony it appears that the differences pointed out by the Supreme Court of the United States in the Indiana and North Carolina cases are indisputably shown not to exist in the state of Mississippi, and, if existing to any extent whatsoever, that their existence has no relation to the difference between the operation of more than five and less than six stores. The second is that the Mississippi statute is not a privilege or occupation tax, but is a tax on gross sales. The third is that the act is violative of section 112 of the Constitution of the state of Mississippi. The fourth is that the alleged retroactive effect of the Mississippi statute in doubling the tax on the first five stores, when the number owned exceeds five, is vicious to the point of confiscation in the amount of the excess because

the owner of only five or less is exempted from the double assessment.''

. . . . . . . . . . . . .

''The matter of classification is not for expert witnesses, but for the Legislature, primarily and conclusively, unless a state of facts reasonably cannot be conceived to sustain it.''

. . . . . . . . . . . . .

''No tax is levied upon an isolated sale or upon any number of isolated sales. It is an annual privilege tax on account of the business activities of every person engaged or continuing within this state in the particular business designated.''

. . . . . . . . . . . . .

''The ordinary retailers are taxed one-fourth of 1 per cent., the chain store owners one-half of 1 per cent., and the wholesalers or jobbers one-eighth of 1 per cent. of the gross income of the business. With a few exceptions every other method of earning a livelihood in the state of Mississippi is subjected to the payment of a privilege tax, the amount of which is ascertained by computing a specified percentage of the gross income. The percentages range from one-tenth of 1 per cent. to 1 per cent., except in the case of dealers in cigars and cigarettes, wherein the rate is 20 per cent. The amount to be paid by each is rendered certain by the computation mentioned. A license to conduct such business is made a condition precedent to the right to engage or continue in it. We find nothing in the act, or in the factual conditions under which it operates, to indicate that it is not, as its name implies, a tax upon the privilege of pursuing certain businesses.''

As this is an excise tax, under the Idaho authorities herein cited, such tax is not within the purview of the provisions of the Idaho Constitution requiring equality and uniformity of tax, then there need be no equality and uniformity in fixing the group license so long as it is uniform within the group. The Fourteenth Amendment to the federal Constitution only requires the same means and methods to be applied impartially to all the constituents of each class so that the law shall operate equally and uniformly

upon people in similar circumstances. (*State v. Horn,* 27 Ida. 782, 152 Pac. 275.) Conceding, as is claimed by appellant, that the statement, ''an increase of the tax on all the stores for the privilege of expanding the chain cannot be condemned as arbitrary,'' made by Mr. Justice Roberts in *Liggett Co. v. Lee, supra,* may have been *dictum,* yet we believe that the same was both logical and reasonable and pertinent to the issues here involved.

Appellant urges most strenuously that the tax in question is confiscatory. The case was decided on demurrer and therefore the facts alleged in the complaint must be taken as true. As heretofore shown, the presumption of law is that the act in question is constitutional unless the facts clearly show that its constitutionality cannot be sustained. The facts, as alleged in the complaint, show that appellant made a net profit on its investment for the year of 1932, if the excise tax is not taken in consideration, of eight and three-fourths per cent. It is alleged that if the law is held valid it would have to pay an excise tax amounting to $14,430, less any deductions for real estate taxes on property owned and exempted under the law. As there is no allegation in the complaint as to the exemption it would be allowed for taxes paid on real property, the total amount of appellant's excise tax is not certain. But even assuming that it would have to pay the entire $14,430, without any real estate tax exemption, the appellant would still have earned six and one-half per cent on its investment for that year, and this in face of the fact that 1932 was one of the worst depression years this country has ever experienced, and that during such times business generally did not thrive and prosper but in many instances suffered loss and even failure. Appellant says, however, that if it is required to pay the tax thirteen of its stores cannot be operated without loss, but there is no claim made that all of appellant's stores would have made a profit were it not for the payment of this tax. The large net profit, as shown by the complaint, was made by all of the stores in the state operated as a whole, and it is only reasonable to assume that some of the stores within the chain made large

profits, and it would be very unusual indeed if others within the chain were not run at a loss, even without the payment of the license fee. But in view of the fact that all of these stores were under one management and conducted as a single business, the rule is that the earnings of the business and not any one store or number of stores within a chain must be used as the basis for consideration.

In the companion case before us, the Safeway Company, if it is required to pay the tax will have made a net profit for the year of 1932, of one and one-half per cent on its investment. Considerably less than in the instant case. If we were to admit that any net profit in the year of 1932 was not unusual, and that most of the profit of one individual or company is taken by the tax, nevertheless such concession would not be sufficient to make the law unconstitutional. It is not merely sufficient to show that occasionally an individual or corporation will have his or its profits reduced or taken by tax legislation. The rule is whether the tax is unreasonable or confiscatory in its operation on the class and not upon an isolated case. In *Smallwood v. Jeter, supra,* this court held that a charge of five per cent of gross earnings was not unreasonable or exorbitant, so as to make the act unconstitutional, further:

"The fact that an auto business will not pay for operation and protection of the passengers is no argument for its conduct without such protection; or that a business will not pay a license tax which the legislature has the power to exact, and leave a margin of profit, is no just cause for foregoing the tax."

.    .    .    .    .    .    .    .    .    .    .    .    .

"The fact that the requirements may prevent some from operating is not ground for declaring the act unconstitutional. Almost any regulation might do that. The mere fact that in some cases the act may work a hardship is not ground for declaring it unconstitutional, unless it is so unreasonable as to be confiscatory and oppressive in its general operation upon a business which may not be prohibited. (*Ohio Tax Cases,* 232 U. S. 576, 34 Sup. Ct. 372, 58 L. ed. 737.)" (See, also, *In re Kessler, supra.*)

In *Interstate Busses Corp. v. Blodgett,* 19 Fed. (2d) 256, affirmed by the United States supreme court in 276 U. S. 245, 48 Sup. Ct. 230, 72 L. ed. 551, the court said:

"The reasonableness of an excise tax for revenue does not depend upon whether a hardship may be worked in a single case, but upon the general operation of them all in the class to which it applies."

In *Veazie Bank v. Fenno, supra,* the supreme court of the United States uses this language:

"The first answer to this is that the judicial cannot prescribe to the legislative departments of the government limits upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons, but the responsibility of the legislature is not to the Courts but to the people by whom its members are elected. So if a particuar tax bears heavily upon a corporation it cannot for that reason only be pronounced contrary to the constitution."

In *Alaska Fish Salting etc. Co. v. Smith,* 255 U. S. 44, 41 Sup. Ct. 219, 65 L. ed. 489, this language was used:

"If Alaska deems it for its welfare to discourage the destruction of herring, and to that end imposes a greater tax upon that part of plaintiff's industry than upon similar use of other fish, it hardly can be said to be contravening the Constitution that has known protective tariffs for a hundred years. Encouraging one industry and discouraging another."

To the same effect, see *Great Atlantic & Pac. Tea Co. v. Maxwell,* 199 N. C. 433, 154 S. E. 838, affirmed by the United States supreme court in 284 U. S. 575, 52 Sup. Ct. 26, 76 L. ed. 500.

Conclusions of law alleged in a complaint are not admitted by the demurrer. The appellant repeatedly alleges in its complaint that the tax in question is excessive, unreasonable, confiscatory, arbitrary and words of similar import, which are but conclusions of law and not admitted by the demurrer. A plaintiff must allege facts, values and amounts to show the excessive, unreasonable or confiscatory nature of a tax, which facts alone are admitted by the

demurrer. (*Smallwood v. Jeter, supra; Armstrong v. Johnson Storage & Moving Co.*, 84 Colo. 142, 268 Pac. 978.)

Appellant has cited many authorities in support of the propositions advanced, but an analysis of the same would unduly lengthen this opinion. Suffice it to say, that in many instances the cases cited are readily distinguishable from the case at bar. As to those cases holding *contra*, we believe that the rules herein stated are supported by the best reason and logic and the weight of authority.

Our conclusion is that the lower court did not err in sustaining the general demurrer to the complaint and dismissing the case, for the reason that the act in question, chapter 113, Session Laws, 1933, does not violate either the federal or state Constitution in any particular, based on any facts set forth in the complaint.

Judgment affirmed, with costs awarded to respondents.

Budge, C. J., and Givens, Morgan and Holden, JJ., concur.

Petition for rehearing denied.