(Nos. 6470 and 6471. January 25, 1938.)

IDAHO GOLD DREDGING COMPANY, a Corporation, et al., Appellants, v. JOHN L. BALDERSTON, Commissioner of Law Enforcement of the State of Idaho, and J. W. TAYLOR, Attorney General of the State of Idaho, Respondents.

UNITED MERCURY MINES COMPANY, a Corporation, et al., Appellants, v. JOHN L. BALDERSTON, Commissioner of Law Enforcement of the State of Idaho, and J. W. TAYLOR, Attorney General of the State of Idaho, Respondents.

[78 Pac. (2d) 105.]

Hawley & Worthwine, for Appellants.

J. W. Taylor, Attorney General, and Ariel L. Crowley, Assistant Attorney General, for Respondents.

GIVENS, J.—In action No. 6470, appellants, as placer miners for themselves, and as representatives of the class to which they belong; and in action No. 6471, appellants as lode miners for themselves, and as representatives of the class to which they belong, respectively sued in the district court to require John L. Balderston, Commissioner of Law Enforcement of the State of Idaho, and J. W. Taylor, Attorney General of the State of Idaho, respondents, to show cause why they should not be enjoined and restrained from enforcing chapter 65, Sess. Laws, 1935, 1st Extra Sess., p. 182[1].

---

[1] "AN ACT

*Providing for the imposition of a license tax for the privilege of mining or extracting ores upon all persons engaged in the business of mining or extracting ores in the state; for determining the measure of the tax levied by this act, which shall be in addition to all other taxes provided by law; fixing the time of payment of such tax and the distribution thereof; providing for enforcing and collecting the same by Commissioner of Law Enforcement; and prescribing penalties for violation thereof.*

General demurrers were interposed, sustained and the complaints ordered dismissed, whereupon stipulations were entered into suspending, pending the appeals, the enforcement of the statute, upon appellants respectively furnishing specified bonds or security, and judgments entered accordingly. Separate appeals were taken. Further stipulation consolidated the actions for the purpose of the hearing in

"Section 1. LICENSE TAX TO BE MEASURED BY THREE PER CENT OF THE VALUE OF ORES MINED. For the privilege of mining or extracting ores in this state, every person, co-partnership, company, joint stock company, corporation or association, however and for whatever purpose organized, in the business of mining in this state, upon any quartz vein or lode, or placer mining claim, containing gold, silver, copper, lead, zinc, coal or other precious and valuable metals or minerals, or metal or mineral deposits, shall pay to the State of Idaho, in addition to all other taxes provided by law, a license tax equal in amount to three percent of the value of ores mined or extracted as determined by this act, said tax to be due and payable on or before the first day of June of each year.

"Section 2. VALUE OF ORE TO BE USED AS MEASURE OF TAX—HOW DETERMINED. For the purpose of measuring and determining the amount of tax to be paid under the provisions of Section 1 of this Act, the value of ore mined or extracted shall be the amount of money received from the mining or extracting of said ores from said mine or mining claim, after the deduction of the actual expenditure of money and labor in and about extracting the ores from the mine or mining claim, and transporting the same to the mill, concentrator or reduction works, and the reduction thereof, and the conversion of the same into money, or its equivalent, and also the deduction of all moneys expended for necessary labor, machinery and supplies needed and used in the mining operations, for the improvements necessary in and about the mine or mining claim, for reducing ore, for the construction of the mills and reduction works used and operated in connection with the mine or mining claim, for transporting the ore, and for extracting the metals and minerals therefrom; but the money invested in the mine, or improvements made during any year except the year immediately preceding the filing of the statement as required in Section 3 of this Act, shall not be included therein. Such expenditures shall not include the salaries, or any portion thereof, of any person or officer not actually engaged in the working of the mine or personally superintending the management thereof.

"Section 3. STATEMENT OF NET PROCEEDS FROM MINING OR EXTRACTING ORES. Every person, co-partnership, company, joint stock company, corporation, or association engaged in the business of mining or extracting ores from any quartz vein or lode, or placer

this court. The only difference between the two cases is that in the Idaho Gold Dredging case No. 6470 it is contended the statute does not apply to placer mining, and in the other that since there is no valid reason why the statute should not apply to both placer and lode mining, and not applying to placer mining, it unlawfully discriminates against lode mining.

mining claim, containing gold, silver, copper, lead, zinc, coal or other precious or valuable minerals or metals, or mineral or metal deposits, must, between the first day of January and the first day of May in each year, deliver to the Commissioner of Law Enforcement of the State of Idaho a duplicate copy of the statement of the net profits from the mining or extracting said metals or minerals as required under Section 61–2303, Idaho Code Annotated, accompanied by a verification under the oath of such person or superintendent or managing agent of such company, corporation or association, that the same is a true and correct copy of the original statement filed with the assessor of the county in which such mine or mines are located as provided by Section 61–2303, Idaho Code Annotated.

"Section 6. PAYMENT OF LICENSE TAX—INTEREST ON DELINQUENCIES. The license tax imposed herein shall be remitted with the sworn copy of the statement and paid on or before the first day of June of each year, beginning with the year 1935, and on or before the first day of June of each year thereafter, to the Commissioner of Law Enforcement of the State of Idaho, who shall receipt therefor and promptly turn same over to the State Treasurer, as other receipts of his office, and the State Treasurer shall place same to the credit of the public school fund of the state. License taxes not paid on the date due shall become delinquent and shall bear interest from said date until paid at the rate of eight per cent per annum.

"Section 7. FAILURE TO FILE COPY OF NET PROCEEDS—FAILURE TO PAY LICENSE TAX—TRIPLE LIABILITY—INJUNCTION. Any person referred to in Section 1 of this Act who shall fail to file a duplicate copy of net proceeds as required by this Act, or who shall violate any of the provisions of this Act, or who shall fail to pay the license tax herein provided for, or any part thereof, when due shall be liable, in addition to the interest thereon, for three times the unpaid or delinquent license tax, in a civil action instituted for that purpose in any court of competent jurisdiction, by the Commissioner of Law Enforcement in the name of the State of Idaho, and in such suit upon application of the state, an injunction may be issued without requiring any bond, restraining the defendant from continuing to mine or extract ores from any mine or mining claim in the state, so long as any license taxes due hereunder from said defendant shall remain delinquent."

■ We need not enter into any extended erudite elucidation of the distinctions between placer and lode mining or whether ''ores'' may be said to, under some, or any, definitions or distinctions, cover that which is of value in placer mining, because the universal rule of statutory construction is that all parts of an act must be construed together. (*People v. Owyhee Min. Co.,* 1 Ida. 409; *Swain v. Fritchman,* 21 Ida. 783, 125 Pac. 319; *Boise-Payette L. Co. v. School Dist. No. 1,* 46 Ida. 403, 268 Pac. 26; *Filer Highway Dist. v. Shearer,* 54 Ida. 201, 30 Pac. (2d) 199; *Ingard v. Barker,* 27 Ida. 124, 147 Pac. 293; *State v. Jones,* 34 Ida. 83, 199 Pac. 645; *In re Segregation of School Dist. No. 58,* 34 Ida. 222, 200 Pac. 138; *First Nat. Bank v. Board of Commrs.,* 40 Ida. 391, 232 Pac. 905; *Sprouse v. Magee,* 46 Ida. 622, 269 Pac. 993; *Lebrecht v. Union Indemnity Co.,* 53 Ida. 228, 22 Pac. (2d) 1066, 89 A. L. R. 640.)

■■ To give effect to appellants' contention would necessitate completely and entirely ignoring the word ''placer'' in section 1 of the statute, and giving an unduly and unjustifiably restricted meaning to the term ''mining'' in the title and body of the statute.

There is another rule of statutory construction that where one possible construction will sustain a statute, and another not, the court must adopt the sustaining construction. If appellants be correct in their position that to hold the statute applicable to lode and not to placer mining would defeat it as unconstitutionally discriminatory, and the statute can possibly be held applicable to both, the court must do so, and sustain the statute. (*State v. Omaechevviaria,* 27 Ida. 797, 152 Pac. 280; *Intermountain Title Guar. Co. v. Egbert,* 52 Ida. 402, 16 Pac. (2d) 390.)

Section 3 of the statute relies on section 61–2303, I. C. A., as the basis for determining the tax, and section 61–2303, I. C. A., includes both placer and lode mining, clearly indicating what the legislature intended. (*City of Idaho Falls v. Pfost,* 53 Ida. 247, 23 Pac. (2d) 245.)

We proceed to consider the points raised, common to both appellants' attack upon the law, and the one opinion herein will dispose of both cases.

.Appellants contend the title is insufficient under sec. 16, art. 3, Idaho constitution, because it does not specify that the proceeds of the tax goes into the Public School Fund, and because it fails to specify that a duplicate copy of the statement which is required under section 61–2303, I. C. A., is to be delivered to the Commissioner of Law Enforcement, thus violating the requirement that the legislature should be informed of the essentials of the statute.

The title of the statute advises that the *body* thereof fixes the distribution of the tax, and the determination of its measure.

"If the legislature is fairly appraised of the general character of an enactment, by the subject expressed in the title, and all its provisions have a just and proper reference thereto, and are such as, by the nature of the subject so indicated, are manifestly appropriate in that connection, and as might reasonably be looked for in a measure of such a character, the requirement of the constitution (Art. III, Sec. 16) is complied with. . . . . " (*Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 318, 68 Pac. 295, 101 Am. St. 201.)

That the title herein did not specify distribution to a particular fund was not necessary, since the body of the statute does.

" . . . . It is well settled that matters of detail need not be specified in the title, nor it need not catalogue all the powers intended to be bestowed." (*State v. Calloway,* 11 Ida. 719, 737, 84 Pac. 27, 114 Am. St. 285, 4 L. R. A., N. S., 109.)

" . . . . To hold that each subdivision of the subject and each and every of the ends and means necessary for the accomplishment of the object of the act must be specifically mentioned in the title, would greatly embarrass legislation and accomplish no legitimate purpose. . . . .

" . . . . 'The subject of a statute is one thing and its detailed provisions quite another; one is the topic, the other its treatment; one is required to be stated in the title, the other is not.' " (*State v. Dolan,* 13 Ida. 693, 701, 92 Pac. 995, 14 L. R. A., N. S., 1259, quoting from *State v. Doherty,* 3 Ida. 384, 29 Pac. 885, and *State v. Jones,* 9 Ida. 693, 75 Pac. 819.)

" . . . . This title states the general subject to be treated by the act, to wit, a license (excise) tax on the business of mining, the basis of determining the tax, time of payment, and *distribution* and how collected. Thus specifying the particular measures and methods embraced within the act carrying out the general purpose and object of the act. . . . There is nothing in the title which could in any way have misled the legislature passing the same or which can mislead the people as to the intent and purpose of the legislature in enacting such law. Our intention has not been called to any contradictory legislation within its provisions or any subjects not connected with or related to the general subject stated in the act. It seems to be broad enough to cover all the subjects dealt with in the act, but is not too broad so as to indicate any intention to legislate upon a subject which the body of the act does not cover." (*Kessler v. Fritchman*, 21 Ida. 30, 49, 119 Pac. 692.)

"Necessarily the title of an act must be brief. The object of the title is to give a general statement of the subject matter, and such a general statement will be sufficient to include all provisions of the act having a reasonable connection with the subject mentioned and a reasonable tendency to accomplish the purpose of the act. The object of the title is not to state the reason for the passage of the act, or to give an index to its contents, but to give a general statement of the subject matter of the act. (*Tarantina v. Louisville & N. R. R. Co.*, 254 Ill. 624, Ann. Cas. 1913B, 1058, 98 N. E. 999.) As was stated in the case of *State v. Pioneer Nurseries Co.*, 26 Ida. 332, 143 Pac. 405, and other cases therein cited, 'the title . . . . is sufficient if the act treats of but one general subject and that subject is expressed in the title.'

. . . . . . . . . . . .

"In *People v. Parks*, 58 Cal. 624, it is said: 'Provisions of an act may be numerous; but however numerous, if they can be, by fair intendment, considered as falling within the subject matter of legislation, *or necessary as ends and means to the attainment of the subject,* the act will not conflict with the constitution' . . . .

. . . . . . . . . . . .

"It is a well-established rule that where there is a doubt whether the subject of the act is sufficiently expressed in its title, the doubt should be resolved in favor of the validity of the act. Even though we were in doubt as to the sufficiency of the title under consideration, we are admonished, in the case of *State v. Pioneer Nurseries Co., supra,* to resolve that doubt in favor of the validity of the act. There is, however, no doubt in our minds as to the sufficiency of the title."

(*In re Crane,* 27 Ida. 671, 688, 151 Pac. 1006, L. R. A. 1918A, 942, approved in *State v. Pasta,* 44 Ida. 671, 676, 258 Pac. 1075, and *Twin Falls Bank & T. Co. v. Pringle,* 55 Ida. 451, 457, 458, 43 Pac. (2d) 515; and followed in *Barton v. Alexander,* 27 Ida. 286, 148 Pac. 471, Ann. Cas. 1917D, 729.)

A title need not be an index of the contents of an act; it is sufficient if it express the subject, and all provisions germane and incidental to the subject are covered thereby; provisions not incongruous, and having a proper relation to the subject, may be included in the act without mention in the title, and before the court will hold any title defective or any provision not properly included under the title the defect or departure must be plain and manifest. (*Martin v. Tyler,* 4 N. D. 278, 60 N. W. 392, 25 L. R. A. 838; *State v. Tazwell,* 125 Or. 528, 266 Pac. 238, 240, 241, 59 A. L. R. 1436; *Thompson Yards, Inc., v. Kingsley,* 54 N. D. 49, 208 N. W. 949, 952; *State v. Morgan,* 2 S. D. 32, 48 N. W. 314; *Wheelon v. South Dakota Land Settlement Board,* 43 S. D. 551, 181 N. W. 359, 14 A. L. R. 1145; *Sarlls v. State,* 201 Ind. 88, 166 N. E. 270, 67 A. L. R. 718; *State v. Lewis,* 118 Fla. 536, 159 So. 792, 99 A. L. R. 123; *Pacific Milling & E. Co. v. Portland,* 65 Or. 349, 133 Pac. 72, 46 L. R. A., N. S., 363; *State v. Pioneer Nurseries, supra; Johnson v. Diefendorf,* 56 Ida. 620, 57 Pac. (2d) 1068; 25 R. C. L. 855, sec. 100, Statutes.)

In *Jackson v. Gallet,* 39 Ida. 382, 389, 228 Pac. 1068, the court held the title of the statute herein considered delusive. Certainly there is nothing delusive about the title herein, but to the contrary it particularly states the statute has a provision as to how the tax is determined and what shall be done

with the money. The composite holdings (of majority and minority) in *Jackson v. Gallet, supra*, being thus summarized in *Federal Reserve Bank v. Citizens B. & T. Co.*, 53 Ida. 316, 332, 23 Pac. (2d) 735, and the analysis of the cases therein considered sustains the sufficiency of the title herein:

"Both the majority and dissenting opinions in *Jackson v. Gallet*, 39 Ida. 382, 228 Pac. 1068, emphasize that the title must be such as to reasonably appraise of what is contained in the body of the act, and that 'a title so general as to practically conceal the subject of the statute, or a false or delusive title, will be treated as not constitutionally framed,' and 'The purpose of this provision is to prevent deception of the members of the legislature and *the people*, which would result from incorporating provisions in the body of an act of which the title gives no indication. . . . A title which conceals the real subject of the statute or one which is delusive or false, violates the constitution.' "

(See, also, *Reif v. Barrett*, 355 Ill. 104, 188 N. E. 889.)

█ Appellants contend the statute imposes duplicate taxation upon the same property resulting in lack of equality and uniformity of the tax, violating art. 7, sec. 5, of the Idaho constitution, and quote from *Humbird Lumber Co. v. Kootenai County*, 10 Ida. 490, 79 Pac. 396, as follows:

"The prohibition contained in that section against duplicate taxation was undoubtedly directed against the taxing of the same property twice during the same year for the same purpose, *while other like and similar property is taxed only once during the same period for the same purpose.*"

From this appellants argue, "while the tax under the Mines Tax Act is to be credited to the 'Public School Fund,' that fund in turn is apportioned among the various counties (sec. 32–805, I. C. A.), and while the tax under secs. 61–2301—61–2311, I. C. A., is the general *ad valorem* tax, it includes school taxes, and therefore is a duplication *pro tanto*. No other property is subjected to the double payment of taxes as is imposed here—all other property in the counties where the mines are located is subject to the general *ad valorem* tax . . . . but no other property pays this so-called license tax. . . . . "

In considering this phase of the controversy we must keep in mind the distinction between duplicate taxation and discriminatory taxation.

In the above opinion the rule quoted is followed with this illustration:

" . . . . as, for example, if property should be taxed against the bailor and bailee or against the trustee and *cestui que trust,* mortgagor and mortgagee—such a taxation would be clearly duplicate, and it is in this sense that the uniformity clause found in many of the constitutions had been construed prior to the adoption of our constitution."

Under the law thus stated and illustrated, the court sustained both a general and a special tax on all property within the respondent county for highway purposes, as not duplicate taxation, and there is more differentiation between income, *ad valorem* and occupation excise taxes, than between two *ad valorem* taxes. The doctrine of the above case has been thus sustained and followed as construed herein. (*Hettinger v. Good Road Dist. No. 1,* 19 Ida. 313, 113 Pac. 721; *Independent H. Dist. No. 2 v. Ada County,* 24 Ida. 416, 134 Pac. 542; *Diefendorf v. Gallet,* 51 Ida. 619, 640, 10 Pac. (2d) 307; *Oregon S. L. R. R. Co. v. Washington County,* 54 Ida. 171, 173, 30 Pac. (2d) 198.) But it is argued mines are taxed twice for schools, while other businesses are not. That is a question of asserted discrimination and is disposed of elsewhere herein.

The point now being established is that an occupation excise tax, as against concurrently levied *ad valorem* and income taxes, all for the support of the public schools, does not result in duplicate taxation.

The very intensification of appellants' argument of the importance of the mining industry in the state, which everyone concedes, emphasizes that the occupation of mining is valuable and when productive, may legitimately be the subject of distinct taxation, separate and apart from, the income derived therefrom and thereby, and the value of the properties worked and improvements and equipment thereon.

Appellants argue that because this occupation tax is applied to mining operations and not other businesses it lacks uniformity. The tax applies to all mining operations

carried on in the state and the legislature may select what businesses or incidents of value are to be taxed, and such selection is not obnoxious to the constitution if the imposition operates equally on all within the particular class so selected, and this tax does so operate.

In *State v. Crosson*, 33 Ida. 140, 190 Pac. 922, the statute singled out certain ones of a general group engaged in transportation, which the court held unjustifiable classification, but recognized the rule. All mines are included herein. The analysis in *Continental Oil Co. v. City of Twin Falls*, 49 Ida. 89, 286 Pac. 353, makes the distinction clear.

"It is well settled that a law is not special in character if all persons subject to it are treated alike." (*State v. Horn*, 27 Ida. 782, 793, 152 Pac. 275.)

"As this is an excise tax, under the Idaho authorities herein cited, such tax is not within the purview of the provisions of the Idaho Constitution requiring equality and uniformity of tax, then there need be no equality and uniformity in fixing the group license so long as it is uniform within the group." (*J. C. Penney Co. v. Diefendorf*, 54 Ida. 374, 403, 32 Pac. (2d) 784.)

(*In re Public Utilities Com.*, 51 Ida. 56, 1 Pac. (2d) 627; *Garrett Transfer etc. Co. v. Pfost*, 54 Ida. 576, 33 Pac. (2d) 743; *State v. Squier*, 56 Nev. 386, 54 Pac. (2d) 227; *The Best Foods v. Welch*, 34 Fed. (2d) 682, 687; *A. Magnano Co. v. Dunbar*, 2 Fed. Supp. 417, 424.)

*Crom v. Frahm*, 33 Ida. 314, 193 Pac. 1013, does not militate against, but sustains this principle, though the statute there considered was banned.

As indicated above the constitutional provisions against duplicate taxation are concerned only with direct property taxes. (*Diefendorf v. Gallet, supra; State v. Jones*, 9 Ida. 693, 75 Pac. 819; *State v. Union Central Life Ins. Co.*, 8 Ida. 240, 67 Pac. 647; *In re Gale*, 14 Ida. 761, 95 Pac. 679; *In re Kessler*, 26 Ida. 764, 146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A. 1915D, 322; *Smallwood v. Jeter*, 42 Ida. 169, 244 Pac. 149; *Garrett Transfer Co. v. Pfost, supra; J. C. Penney Co. v. Diefendorf, supra; Geo. B. Wallace, Inc., v. Pfost*, 57 Ida. 279, 65 Pac. (2d) 725, 729, 110 A. L. R. 613.) But appellants contend this is not an excise but

in effect an *ad valorem* property tax in disguise and, therefore, is imposing a double taxation upon them, "while other like and similar property is taxed only once during the same period for the same·purpose," again relying on the Humbird case, *supra*.

"Excises, in their original sense, were something cut off from the price paid on sale of goods, as a contribution to the support of government. The word has, however, come to have a broader meaning and includes every form of taxation which is not a burden laid directly upon persons or property; in other words, excise includes every form of charge imposed by public authority for the purpose of raising revenue upon the performance of an act, the enjoyment of a privilege, or the engaging in an occupation. (25 R. C. L. 34, sec. 18)." (*Diefendorf v. Gallet, supra.*)

"According to the weight of authority a tax imposed on persons engaged in severing from the soil natural resources, such as timber, oil, natural gas, ore, or the like, based on the quantity or the value of the product thus severed, is valid. Such a tax is deemed a privilege or occupation tax, a proper exercise of the power to impose such taxes, and not within constitutional requirements relating to the imposition of property taxes."

(Annotation in 32 A. L. R. 827, to the case of *Floyd v. Miller Lumber Co. et al.*, 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 811.)

In the case of *Northern Pac. Ry. Co. v. Gifford*, 25 Ida. 196, 136 Pac. 1131; Id., 235 U. S. 711, 35 Sup. Ct. 198, 59 L. ed. 436; Id., 242 U. S. 659, 37 Sup. Ct. 21, 61 L. ed. 549; 31 Harvard Law. Rev. 736, 103 A. L. R. 64n, 105 A. L. R. 20n, 28n, 50n, it was contended by plaintiff that the Idaho corporation tax (chap. 6, sec. 3, Sess. Laws, Ex. Sess. 1912, p. 13, I. C. A., 29–601 et seq.) imposed duplicate taxation upon the corporations coming under the provisions of the act, since they were already subject to a property tax. The court said (page 201 of the Idaho report):

"The fee required to be collected under the·provisions of the statute involved in this case is referred to indiscriminately as a 'license tax' or an 'annual license fee' by the statute, which makes it clear that it is not intended

as a property tax. That fact appears from the statute in unmistakable terms. The fee here exacted is clearly an excise tax as usually distinguished from a property tax. It is authorized by that portion of sec. 2, art. 7, of the state constitution which says: 'The legislature may also impose a license tax (both upon natural persons and upon corporations, other than municipal, doing business in this state).' "

In *Diefendorf v. Gallet*, 51 Ida. 619, 625, 10 Pac. (2d) 307, the court stated:

"The tax sought to be imposed by this act is a graduated impost upon the annual net income received from all sources by the taxpayer. It is against the person of the taxpayer, and is not assessed against any items of property, nor is it a lien on property. Neither is it a tax on gross gain from property or business. The personal nature of the imposition is made clear by section 70 of the act: 'Every tax imposed by this act, . . . . shall be a debt from the taxpayer to the state. . . . . ' . . . . The law as a whole indicates an intent to impose a personal obligation only upon the taxpayer, and there is no slightest suggestion in it that the tax attached to the *corpus* of any class or kind of property. . . . . "

(*Utah Power & Light Co. v. Pfost*, 52 Fed. (2d) 226, Id., 286 U. S. 165, 52 Sup. Ct. 548, 76 L. ed. 1038; *Northern Pac. Ry. Co. v. Gifford, supra; In re Kessler, supra; J. C. Penney Co. v. Diefendorf, supra; Gulf Refining Co. v. McFarland*, 154 La. 251, 97 So. 433; *Floyd et al. v. Miller Lbr. Co., supra.*)

"The Fourteenth Amendment to the federal Constitution only requires the same means and methods to be applied impartially to all the constituents of each class so that the law shall operate equally and uniformly upon people in similar circumstances. . . . . "

(*J. C. Penney Co. v. Diefendorf, supra; Johnson v. Diefendorf, supra.*)

Appellants' contention that only occupations "which would have been invalid without license" can be licensed by the state, and that, therefore, the legislature has no authority to license mining is without foundation.

"Under and subject to rules elsewhere discussed, license, occupation, or privilege taxes may be imposed on the business of mining. Statutes imposing occupation or privilege taxes based upon the amount of the product mined are valid notwithstanding they are additional to *ad valorem* taxes on oil leases, or on the land, or are in addition to other license taxes paid by the same person in a related occupation, . . . .

" . . . . The fact that such a tax is based on tonnage does not make it a direct tax. . . . . "

(40 C. J. 1141, sec. 791.)

"The states, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the 14th Amendment, but that Amendment imposes no iron clad rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. The state may tax real and personal property in a different manner. It may grant exemptions. The state is not limited to *ad valorem* taxation. It may impose different specific taxes upon different trades and professions and may vary the rates of excise upon various products."

(*Ohio Oil Co. v. Conway*, 281 U. S. 146, 50 Sup. Ct. 310, 74 L. ed. 775, 782.)

The case of *Republic Iron & Steel Co. v. State*, 204 Ala. 469, 86 So. 65, 68, involved the constitutionality of an act imposing a tax of "two cents per ton on all coal mined during the last preceding month" on "every firm, corporation, partnership, joint-stock company or association engaged in the business of operating a coal mine in this state." The court stated:

"In the levy of a privilege or license tax the Legislature is not restricted as to the trades, businesses or occupations which it may select, or the amount levied, so long as it does not discriminate between members of the same class, that is, those similarly situated, and the tax must not be so exorbitant as to prohibit or oppress or restrain a legitimate or useful trade, business or occupation. . . . .

"Everything to which the legislative power extends may be the subject of taxation, whether it be person or property, or possession franchise, or privilege, or occupation or right.

Nothing but express constitutional limitation upon legislative authority can exclude anything to which the authority extends from the grasp of the taxing power, if the legislature in its discretion shall at any time select it for revenue.'' (Cooley, Taxn., 2d ed., p. 5.) *Floyd v. Miller Lbr. Co.*, 160 Ark. 17, 254 S. W. 450, 32 A. L. R. 811.

(*Raydure v. Board of Suprs. of Estill County*, 183 Ky. 84, 209 S. W. 19, 25; *In re Sinclair Prairie Oil Co.*, 175 Okl. 289, 53 Pac. (2d) 221; *Group No. 1 Oil Corp. v. Sheppard*, (Tex. Civ. App.) 89 S. W. (2d) 1021; *Ohio Oil Co. v. McFarland*, 28 Fed. (2d) 441; *Duke Power Co. v. Query*, 10 Fed. Supp. 669; *Lake Superior, etc., v. Lord*, 271 U. S. 577, 46 Sup. Ct. 627, 70 L. ed. 1093; *Wright et al. v. Imperial Oil & Gas P. Co.*, 177 La. 482, 148 So. 685, 686; *Norum v. Ohio Oil Co. et al.*, 83 Mont. 353, 272 Pac. 534; *Flynn, Welch & Yates, Inc., v. State Tax Com. et al.*, 38 N. M. 131, 28 Pac. (2d) 889; *Utah Power & Light Co. v. Pfost*, 52 Fed. (2d) 226; Id., 286 U. S. 165, 52 Sup. Ct. 548, 76 L. ed. 1038.)

Any business, occupation or profession may be made the subject of a reasonable excise or occupation tax so long as the tax is uniform on all persons engaged in the business, trade or profession which is the subject of the tax. The act here imposes a uniform tax upon ''every person, co-partnership, company, corporation or association, . . . . in the business of mining in this state.''

If we understand correctly, appellants cite authorities evidently considered to buttress their position that this is a property or *ad valorem* tax, not an excise or income tax, hence in effect a double *ad valorem* tax, or if an excise tax, it is in either or both respects violative of art. 7, sec. 5, Idaho constitution, as double taxation. Bearing in mind then that this is an excise tax on an occupation, the authorities so cited by appellants are thus distinguishable or support respondents: *Oregon Short Line Railroad Co. v. Washington County et al.*, 54 Ida. 171, 30 Pac. (2d) 198, and *Humbird Lumber Co. v. Kootenai County, supra,* because the court therein held two levies for the same purpose (highways) on real property was not duplicate taxation. *Independent H. Dist. No. 2 v. Ada County*, 24 Ida. 416, 431, 134 Pac. 542, held

a statute authorizing, in effect, a tax against all property in the county including that in a highway district, for county bonds when the highway district might also issue bonds secured only by property in the district, but within the county, was not duplicate taxation; as was also the case in *Hettinger v. Good Road Dist. No. 1,* 19 Ida. 313, 319, 113 Pac. 721. *Diefendorf v. Gallet, supra,* held an income tax was not duplicate taxation under art. 7, sec. 5, as to the taxpayer's real or personal property taxed on an *ad valorem* basis. *Independent School Dist., etc., v. Pfost,* 51 Ida. 240, 4 Pac. (2d) 893, 84 A. L. R. 820, upholds respondents, sustaining the tax herein as an excise tax on the business of mining and as distinct and on a separate basis from any and all other taxes levied or assessed at the present time on mining. In *McAlester-Edwards Coal Co. v. Trapp,* 43 Okl. 510, 141 Pac. 794, the first point passed on was that the purpose for which the tax was levied was sufficiently specified in the original and amendatory acts, relying on *Binion v. Oklahoma Gas & Elec. Co.,* 28 Okl. 356, 114 Pac. 1096, which in turn relied in part on *State v. Jones,* 9 Ida. 693, 75 Pac. 819, and *Vineyard v. City Council,* 15 Ida. 436, 98 Pac. 422, thus sustaining our holding *supra,* as to the sufficiency of the title herein considered. The second point was that the statute here considered was in contravention of the federal constitution in that the United States Government had sole control over the land (Indian lands) where the coal was mined and that plaintiffs there contesting the tax, were in effect agents of the federal government, whereby an instrumentality of the federal government was taxed, which question is in no way involved or pertinent herein. In *Binion v. Oklahoma Gas & Elec. Co., supra,* under a constitutional provision similar to art. 3, sec. 16, relied on by appellants, an act with this title:

"An Act

Providing for the levy and collection of a gross revenue tax from public service corporations in this state and from persons, firms, corporations or associations engaged in the mining or production of coal, asphalt or ores bearing lead, zinc, jack, gold, natural gas; and declaring an emergency."
(Chap. 71, art. 2, 1907, 1908, Okl. Sess. Laws.)

was held to be an act based on percentage of gross receipts being in addition to the *ad valorem* tax on the property and assets of the taxpayer and being similar in general import and provisions as to the statute herein except it did not specify into what fund the tax should go. *McGannon v. State ex rel. Trapp et al.*, 33 Okl. 145, 124 Pac. 1063, Ann. Cas. 1914B, 620, upheld a statute titled as follows:

"An Act
Providing for a tax on gifts, inheritances, bequests, legacies, devises and successions in certain cases; and declaring an Emergency." (Chap. 81, art. 11, Okl. Sess. Laws 1907–08, p. 733.)

And containing this provision

"Sec. 22. All taxes levied and collected under this act, less any expenses of collection, shall be paid into the treasury of the State, and one-half of same shall be used for the public schools of this State, as other available State common school funds, and one-half shall be applicable to the expenses of the State Government and to such other purposes as the Legislature may by law direct."

These authorities held such titles sufficient and are further fortified on this point by *Jefferson v. Toomer*, 28 Okl. 658, 115 Pac. 793; *McAlester-Edwards Coal Co. et al. v. Trapp, supra, Ex parte Ambler*, 11 Okl. Cr. 449, 148 Pac. 1061, *Insurance Co. of North America v. Welch*, 49 Okl. 620, 154 Pac. 48, Ann. Cas. 1918E, 471, *Missouri K. & T. Ry. Co. v. Myer*, 204 Fed. 140, and *Geren v. Courts Trading Co.*, 99 Okl. 170, 226 Pac. 369.

That the exigencies of the situation confronting Oklahoma in attempting to tax the minerals or oils of the state when produced from lands affected by federal control very evidently influenced the decisions of that court, is evidenced by the diversity of reasoning disclosed by a careful study of the decisions which have passed on the various phases of the subject. (*In re Skelton L. & Z. Co.'s Gross Prod. Tax*, 81 Okl. 134, 197 Pac. 495; *In re Protest of Bendelari, Gross Prod. Tax 1919*, 82 Okl. 97, 198 Pac. 606; *Wier v. Jaybird Min. Co.*, 104 Okl. 271, 232 Pac. 425; *Robinson v. State*, 41 Okl. Cr. 239, 272 Pac. 392.) No such dilemma confronts us.

*United States v. Iron S. M. Co.*, 128 U. S. 673, 9 Sup. Ct. 195, 32 L. ed. 571, involved claimed fraud in patenting mining claims; no question of taxation, duplicate or otherwise, was involved. The only possible bearing that *Inyo Marble Co. v. Loundagin*, 120 Cal. App. 298, 7 Pac. (2d) 1067, and *Loney v. Scott*, 57 Or. 378, 112 Pac. 172, 32 L. R. A., N. S., 466, or the statutes concurrently referred to (sec. 30 U. S. C. A., sec. 35, 30 U. S. C. A., sec. 37) could have is that the federal statutes and decisions clearly distinguish betwcen lode and placer claims, and that, therefore, we should here. But as elsewhere pointed out herein, the legislature in the statute involved clearly intended the tax to apply to both, so the distinction between the two kinds of mining is unimportant. *Thompson v. Kreutzer*, 112 Miss. 165, 72 So. 891, considered chapter 112, Session Laws of Mississippi, 1912, which provides as follows:

"Section 1. *Be it enacted by the Legislature of the State of Mississippi,* That there is hereby levied an annual privilege tax, or occupation fee, of twenty cents per acre upon each person, association of persons, or business firms and corporations pursuing the business of buying, owning or holding more than one thousand acres of timber land or lands in this State. Provided, that where such lands are taxed with a five cent acreage tax for levy purposes, said levy tax shall be deducted from the tax hereby imposed."

It was held that the above act imposed a tax on property as such and was not a privilege or occupation tax and hence violated section 112 of the Mississippi constitution, but since the tax under consideration is an excise tax the case is not in point.

In *State v. Lakeside Land Co.*, 71 Minn. 283, 73 N. W. 970, the pertinent holding was under a provision of the Minnesota constitution so substantially different from ours as to be of no force or effect, which conclusion finds support in *State ex rel. Oliver Iron Min. Co. v. Armson*, 181 Minn. 221, 232 N. W. 35; discussing the latter imposed occupation tax of 6 per cent. on the value of ore extracted in mining; holding no duplication where the same was imposed on the operator, and a 6 per cent. royalty tax on the owner if not the operator and an *ad valorem* tax on the mine itself.

*Hanley v. Federal Min. etc. Co.,* 235 Fed. 769, merely upholds the Idaho mine tax act of 1903 exacting a tax on the income of the mines according to the value of the mineral produced in addition to the *ad valorem* tax on the surface assessments. *Washington Water Power Co. v. Shoshone County,* 270 Fed. 377, in effect, so far as pertinent, holding the same as the Hanley case, though the precise point involved was claimed factual inequality of assessment.

*Miller v. Buck Creek Oil Co.,* 38 Wyo. 505, 269 Pac. 43, 73 A. L. R. 821, involved only the relative rights of lessor and lessee as to the payment of what was therein held to be a property tax levied on a production basis. *In re Skelton Lead & Zinc Co. Gross Prod. Tax,* 81 Okl. 134, 197 Pac. 495, overrules *In re Gross Prod. Tax of Wolverine Oil Co.,* 53 Okl. 24, 154 Pac. 362, L. R. A. 1916F, 141, and holds the tax on the production of lead and zinc in Oklahoma a property tax (*Bergin Oil & Gas Co. v. Howard,* 82 Okl. 176, 199 Pac. 209), and substituted for an *ad valorem* and an excise tax. *Struby-Estabrook Mercantile Co. v. Davis,* 18 Colo. 93, 31 Pac. 495, 496, 36 Am. St. 266, aside from the consideration of any federal question involved therein, of no moment herein, would merely clarify and uphold as an *ad valorem* tax our statute of 1903 (sec. 61–2301–11, I. C. A.)

*MacLaren v. Ferry County,* 135 Wash. 517, 238 Pac. 579, indirectly holding invalid a gross production tax similar to our statute (sec. 61–2301–11, I. C. A.) does not aid appellants as the court therein itself distinguished *In re Skelton & Zinc Co., etc., supra,* and *Hanley v. Federal Min. etc. Co., supra,* and the wording and history of our constitution. Oklahoma, following *Smallwood v. Jeter,* 42 Ida. 169, 244 Pac. 149, recognizes that two different kinds of taxes do not constitute duplicate taxation. (*Taylor v. Brown,* 145 Okl. 18, 291 Pac. 10.) Oregon, though mindful of *In re Skelton Lead & Zinc Co., etc., supra,* has sustained as constitutional the principle of both occupation, excise taxes and *ad valorem* taxes without being duplication. (*Portland Van & Storage Co. v. Hoss,* 139 Or. 434, 9 Pac. (2d) 122, 81 A. L. R. 1136.) Oklahoma has further held no duplication between a property and an income tax. (*New York Life Ins. Co. v. Board of County Commrs.,* 155 Okl. 247, 9 Pac. (2d) 936, 82 A. L. R.

1425.) *Reif v. Barrett*, 355 Ill. 104, 188 N. E. 889, upholds an occupation excise, on several of the points raised herein, and repudiates *In re Skelton Lead & Zinc Co., etc., supra,* as holding an excise as herein duplicate or discriminatory taxation considered with a property tax.

Appellants argue that the act confers legislative power on the courts in violation of art. 3, sec. 1, of the constitution of Idaho because, since the legislature is without authority to license mining as a privilege, if the court holds the tax not to be a license tax but an excise tax, it is doing so "in a legislative capacity." It has been pointed out that all occupations and trades are the legitimate subject for taxation and it makes no difference whether we call mining a "privilege" as it is designated in the act, or a "right" as appellants insist it is, for in either case it is subject to an occupation excise tax.

*State v. Nelson*, 36 Ida. 713, 718, 213 Pac. 358, cited by appellants does not sustain their contention that the statute unconstitutionally delegates legislative power:

"It will be observed that the restrictions placed upon the legislature by art. 7 of the constitution required that all revenue raised, in the usual sense in which that term is used, shall be in proportion to the value of the property taxed, and shall be uniform upon the same class of subjects; that it shall be levied and collected under general laws, which shall prescribe such regulations as will secure a just valuation for taxation upon all property, real and personal, except as to the license and per capita tax, which the legislature may impose under the provisions of the last clause of said sec. 2 of Art. 7 of the organic law. There are apparently no limitations or restrictions upon the power of the legislature with respect to raising revenue for all purposes for which the legislature is required to provide such revenue as may be needful."

The court does not exercise legislative functions in interpreting, construing, or giving meaning to a legislative act. (*Mountain View Rural Tel. Co. v. Interstate Tel. Co.,* 55 Ida. 514, 46 Pac. (2d) 723; 12 C. J. 872, sec. 375n, p. 72; 12 C. J. 884, sec. 387n, p. 7; *State v. Clausen,* 146 Wash. 588, 264 Pac. 403.)

Appellants argue with force and vigor the court should hold this law unconstitutional; perforce they must grant the court the intermediary right to determine what the legislature intended the law to mean.

" . . . . The usual meaning of a word may be disregarded when it is evident that it was incorrectly used or that the legislature used it in another sense. Where one word has been erroneously used for another, or a word omitted, and the context affords the means of correction, the proper word will be deemed substituted or supplied." (*In re Segregation of School Dist. No. 58,* 34 Ida. 222, 229, 200 Pac. 138.)

"Plaintiff contends that the insurance feature of the act is void because unintelligible, and that it 'cannot be corrected by the addition or omission of words.' We are entitled to and must look to the intention of the legislature as gathered from the whole act, and when a literal reading of a provision will work an unreasonable or absurd result, if a reasonable intent of the legislature can be arrived at, the court should so construe the act as to arrive at such intention rather than an absurdity. To accomplish this purpose, words may be changed, not to legislate, but to arrive at what the legislature intended to enact. 'Especially will this be done when it is necessary to prevent a law from becoming a nullity.'" (*Smallwood v. Jeter,* 42 Ida. 169, 184, 244 Pac. 149; *Sprouse v. Magee,* 46 Ida. 622, 269 Pac. 993.)

Construing the so-called license tax in *Independent School Dist. v. Pfost,* 51 Ida. 240, 4 Pac. (2d) 893, 84 A. L. R. 820, to be an excise tax fully justifies the same construction being applied here and is not judicial legislation.

" . . . . Having thus determined the legislative intent from the face of the statute alone, the question is whether we should effectuate it, or whether, being merely a court and without legislative power, we must see the statute fail.

"Interpretation of legislative language is the constant business of the courts. It has but one legitimate purpose; to arrive at and effectuate the true intent. This is to be determined, not from any one word or phrase, but from the whole enactment. The courts may not substitute their own wisdom and policy for the Legislature's. But they should not attribute to that co-ordinate branch an utterly unrea-

sonable, inexplicable, and ineffectual intent. This statute is before us as the will of that governmental branch responsible for public policy as to municipal revenues. We should not nullify it for anything less than a real inability to comprehend its meaning.

. . . . . . . . . . . . .

"Plaintiff urges that this being a tax statute, and also the sole source of a municipal power, the construction must be strict, and that only unequivocal language will confer the power and support the tax. The canons invoked are familiar and of unquestionable force in proper cases.

"But there is present here plenty of unequivocal language signifying the intent. The difficulty arises from the one word, not so much equivocal or ambiguous, as plainly out of place and unintended. If that word were really equivocal, leaving it doubtful whether the statute was intended for cities, towns and villages, or for towns and villages only, the rules invoked might apply. But the word must be rejected in any event. To stop there leaves us with a senseless act. The word is not merely superfluous. Another word was intended, and the context unerringly discloses it.

"Criminal statutes are to be strictly construed. But, as said by Mr. Justice Roberts, ' . . . . they are not to be subjected to any strained or unnatural construction in order to work exemptions from their penalties. Such statutes must be interpreted by the aid of the ordinary rules for the construction of statutes, and with the cardinal object of ascertaining the intention of the Legislature.' *Ex parte De Vore,* 18 N. M. 246, 136 Pac. 47, 49. See, also, *State v. Southern Pacific Co.,* 34 N. M. 306, 281 Pac. 29, *supra,* where we construed a statute authorizing a special tax levy by a county."

(*Continental Oil Co. v. City of Santa Fe,* 36 N. M. 343, 15 Pac. (2d) 667, 669, 670.)

██ ██ Appellants' further contention that the act violates art. 7, sec. 6, of the constitution of Idaho in that it provides a special tax for the "benefit of municipal corporations, to wit, independent school districts," is untenable for two reasons: First, because art. 7, sec. 6, of the Idaho constitution applies only to property or *ad valorem* taxes.

*State v. Union Central Life Ins. Co.*, 8 Ida. 240, 67 Pac. 647, was an action to collect taxes levied under sec. 1644, Rev. Stats. of Idaho, which statute read as follows:

"Persons, associations or corporations engaged in the occupation of banking, loaning money at interest or in buying or selling notes, bonds or other evidences of indebtedness of private persons, or in buying or selling state, territorial or city stocks . . . . must pay license as follows:

"Subdivision 5: Those doing business in any amount under $50,000 per quarter . . . . must pay a license of thirty dollars per quarter. All revenue collected under this section may be retained by and for the use of the county in which it is collected."

Appellant therein urged that the above statute was in violation of art. 7, sec. 6, of the constitution. The court held as follows: (p. 245 of the Idaho Reports)

"We must look to the intent of the framers of the constitution as well as the lawmakers of the state, to ascertain what was intended by both branches; and it does not occur to us that the framers of the constitution intended to curtail the revenues arising from the license system which was in existence at the time of the adoption of our Constitution. The license system is a separate and distinct way of raising revenues independent of the tax system, and aids largely in carrying on the public school system of the state. . . . .

" . . . . We think that sec. 6, art. 7 of our Constitution was intended to apply only to property taxes. We are disposed to follow the Montana case (*State v. Camp Sing*, 18 Mont. 128, 44 Pac. 516, 56 Am. St. 551, 32 L. R. A. 635) and the case of *State v. Doherty, supra* (3 Ida. 384, 29 Pac. 855)."

In *State v. Nelson*, 36 Ida. 713, 718, 213 Pac. 358, the court in considering art. 7, sec. 6, of the Idaho constitution said:

"It has been frequently held, and correctly, we think, that the term 'taxes' above referred to has reference only to property taxation, where the tax is assessed and collected upon property values in the usual and ordinary manner, and was not intended to include either the license or per capita taxes referred to in sec. 2, which the legislature alone is

authorized to impose upon the inhabitants of the state.''
(Citing *Union Central L. Ins. Co., supra; In re Kessler,*
26 Ida. 764, 146 Pac. 113, Ann. Cas. 1917A, 228, L. R. A.
1915D, 322; *State v. Camp Sing,* 18 Mont. 128, 44 Pac.
516, 56 Am. St. 551, 32 L. R. A. 635; *Johnson v. City of
Great Falls,* 38 Mont. 369, 99 Pac. 1059, 16 Ann. Cas. 974.)

*State v. Camp Sing,* 18 Mont. 128, 44 Pac. 516, 56 Am. St.
551, 32 L. R. A. 635, was a case involving the Montana con-
stitution, art. 12, sec. 4, which provides as follows:

''The Legislative Assembly shall not levy taxes upon the
inhabitants or property in any county, city, town, or muni-
cipal corporation, for county, town or municipal purposes,
but it may by law vest in the proper authorities thereof
powers to assess and collect taxes for such purposes.''

Under this authority a license tax was imposed on every
male person engaged in the laundry business, other than
steam laundries; 70 per cent of this license was to be re-
tained by the county. The court there held the above con-
stitutional provision applied only to property taxes, saying·

'' . . . . Therefore we find throughout the whole of art. 12
distinctive words used in speaking of the taxation system
and the license system. . . . . Such words seem to express an
intent that section 4 should refer to taxation strictly, and
not to licenses. In any event, it is by no means clear to
us that the intent of section 4 was to refer to licenses; and,
if the intent is not clear, we cannot put such construction
upon it as will nullify the law under consideration. . . . . ''

See; also, *Hartman v. Meir,* 39 Ida. 261, 227 Pac. 25;
annotations in 46 A. L. R. 609, 627, and 106 A. L. R. 906,
909.

''It is to be borne in mind that a license or excise tax
is not a tax on 'property' within the provisions requiring
'property' to be taxed uniformly by value, sections 2 and 5,
article 7, Constitution of Idaho, as was decided by this court
in *Diefendorf v. Gallet, supra.*''

(*J. C. Penney Co. v. Diefendorf,* 54 Ida. 374, 32 Pac. (2d)
784.)

'' 'A license tax or tax for the privilege of doing business
is sometimes referred to as an excise, as are all forms of
taxation which are not burdens laid directly upon persons or
property. The three cent tax imposed on gasoline by the

property. The three cent tax imposed on gasoline by the 1924 act, however, is an excise in the original and limited sense, being 'something cut off from the original price paid on a sale of goods, as a contribution to the support of the government.' A careful reading of the act convinces us that the tax imposed was not intended as a license tax or tax for the privilege of selling gasoline in this state.'

. . . . . . . . . . . . . . .

" . . . . It is sometimes said that the constitutional methods of taxation are those mentioned in sec. 2, art. 7 of the Constitution, but this is misleading, for the legislature is not limited by the Constitution to the methods mentioned."

(*Independent School Dist. v. Pfost,* 51 Ida. 240, 250, 4 Pac. (2d) 893, 84 A. L. R. 820; *Smallwood v. Jeter, supra; Heffner v. Ketchen,* 50 Ida. 435, 296 Pac. 768; *In re Kessler, supra.*)

Appellant's contention that the act violates art. 7, sec. 6, of the constitution is also untenable in that school districts are not municipal corporations within the meaning of that section of the constitution, in a controversy such as this.

"It is contended by counsel under the provisions of said sec. 6, of art. 7 that the legislature has no power to authorize or command the county commissioners to make a tax levy of any kind for the reason that such districts are municipal corporations and have the right to levy all needful taxes without any interference from the board of county commissioners or the legislature. We are unable to agree with this contention. We do not think that a school district is a municipal corporation within the meaning of that term as used in said section 6 . . . .

" . . . . We do not think it was the intention of the framers of the constitution or of the legislature in enacting laws in regard to school districts to treat them as municipal corporations. . . . . "

(*Fenton v. Board of County Commrs.,* 20 Ida. 392, 399, 119 Pac. 41; *Atchison, T. & S. F. Ry. Co. v. State,* 28 Okl. 94, 113 Pac. 921, 40 L. R. A., N. S., 1; *Thurston v. Caldwell,* 40 Okl. 206, 137 Pac. 683; *Barton v. Alexander,* 27 Ida. 286, 148 Pac. 471, Ann. Cas. 1917B, 729; annotations in 46 A. L. R. 609 et seq. and 106 A. L. R. 906; *City of Louisville*

*v. Com.,* 134 Ky. 488, 121 S. W. 411; *School Dist. No. 8 v. Twin Falls etc. Ins. Co.,* 30 Ida. 400, 164 Pac. 1174.)

There is no exclusionary language or implication in art. 9, sec. 4, which deprives the legislature of the power to cover into the public school fund other monies than those which, under that section, must be paid into it; and the manner in which losses therein must be supplied by the state, required by art. 9, sec. 3, is left without limitation, other than constitutional, to the discretion of the legislature. (*Ingard v. Barker,* 27 Ida. 124, 131, 147 Pac. 293; *State v. Moore,* 36 Ida. 565, 585, 212 Pac. 349; *Independent School Dist. v. Pfost,* 51 Ida. 240, 4 Pac. (2d) 893, 84 A. L. R. 820; *Lloyd Corp. v. Bannock County,* 53 Ida. 478, 25 Pac. (2d) 217.)

It is next contented by appellants that the act is void and unenforceable because it is incomplete, uncertain, ambiguous and indefinite as to the property covered, the method of assessment, and the officer or board to assess and fix the tax, in that: (1) It is in the nature of a penal act since it ''imposes severe penalties for violation''; that (2) ''the ore to be taxed is not identified''; (3) that it fails to designate any officer or body to ascertain the tax; (4) there are ''ambiguities in ascertainment of basic values and deductions,'' and (5) that ''the act was unenforceable because there was no appropriation and the former action was dismissed because the state pleaded no intention to enforce.''

''It is incumbent upon this court to give a statute an interpretation which will not nullify it, if such construction is reasonable or possible.'' (*Intermountain Title Guaranty Co. v. Egbert,* 52 Ida. 402, 410, 16 Pac. (2d) 390, and cases therein cited.)

''The fact that there may be a difference of opinion as to the meaning of the language of a statute does not render it too vague or uncertain to be enforceable. It is not infrequent that statutes have to be construed by the courts before laymen, or even lawyers, have a settled view as to the proper interpretation, but a statute which is fairly susceptible to definite interpretation is not too vague for enforcement.''

(*Standard Oil Co. v. Brodie,* 153 Ark. 114, 239 S. W. 753; *Greathouse v. Heed,* 1 Ida. 494; *Lamkin v. Sterling,*

1 Ida. 92; *State v. Omaechevviaria, supra; Smallwood v. Jeter, supra; Packard v. O'Neil,* 45 Ida. 427, 262 Pac. 881; *City of Idaho Falls v. Pfost,* 53 Ida. 247, 23 Pac. (2d) 245.)

"It is said that the commissioner, who administers the act, has not provided for these deductions or the means for determining them. But the commissioner must administer the act as it is construed, and it is not to be supposed that he will not properly do so. Undoubtedly, the administration of an act like this one is attended with some difficulty. Measurements and calculations are more or less complicated. Absolute precision in either probably cannot be attained; . . . ."

(*Utah Power & Light Co. v. Pfost,* 286 U. S. 165, 52 Sup. Ct. 548, 76 L. ed. 1038, 1039, 1051.)

Appellants argue that the act is penal in nature, and therefore, must be strictly construed in favor of those against whom it operates, citing 25 R. C. L. 1086, sec. 303, as the correct rule of construction, as follows:

"The test whether a law is penal, in the strict and primary sense, is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual. The effect and not the form of the statute is to be considered and if its object is clearly to inflict a punishment on a person for doing what is prohibited or failing to do what is commanded to be done, it is penal in its character. The prime object of every statute, strictly penal, is to enforce obedience to the mandates of the law by inflicting punishment upon those who disregard them. In such statutes the provision for punishment never rests in uncertainty, and is never based upon a contingency. . . . ."

(*Bell v. Farwell,* 176 Ill. 489, 52 N. E. 346, 68 Am. St. 194, 42 L. R. A. 804; *Aylsworth v. Curtis,* 19 R. I. 517, 34 Atl. 1109, 61 Am. St. 785, 33 L. R. A. 110.)

But the statute herein does not attempt to "redress a wrong" or provide a remedy.

If a statute is sufficiently definite to support a reasonable construction it certainly is not so ambiguous or unintelligible as to be unconstitutional for uncertainty. The act itself identifies the ore or mineral the net value of which determines the amount of tax to be paid. Section 1 provides as follows:

"For the privilege of mining or extracting ores in this state, every person, . . . . in the business of mining in this state, upon any quartz vein or lode, or placer mining claim containing gold, silver, copper, lead, zinc, coal or other precious and valuable metals or minerals, or metal or mineral deposits, shall pay to the state of Idaho . . . . a license tax equal in amount to three per cent of the value of the ores mined. . . . . "

Also, that the tax is due each year "on or before the first day of June" (secs. 1 and 6) and is computed by making deductions limited to "the year immediately preceding the filing of the statement as required in Section 3" (section 2) and that the statement provided in 61–2303, I. C. A., for the preceding calendar year, must be filed between the "first day of January and the first day of May in each year," on the ore or mineral mined the year preceding the one in which the tax is to be paid.

It is contended that the act is void because it fails to designate any officer or body to ascertain the tax. Sections 3 and 6 of the act provide for delivery of a statement of proceeds to the Commissioner of Law Enforcement under oath, and payment of the tax to the Commissioner; section 7 provides for recovery of the tax or determination thereof by civil suit to be instituted by the Commissioner of Law Enforcement in the name of the state of Idaho.

That the Commissioner of Law Enforcement asked for more information than contained in reports required by 21–2303, I. C. A., is not such an enlargement of, or departure from his necessarily implied powers as the collecting officer to render his acts in this regard unconstitutional (*Standrod v. Case*, 24 Ida. 365, 133 Pac. 651) and perforce did not make the statute unconstitutional, because it is not what the officer does but what the statute permits him reasonably to do, i. e., what he may legally do, which determines the statute's constitutionality. (*Boise-Payette Co. v. School Dist. No. 1*, 46 Ida. 403, 411, 268 Pac. 26; *Sterett & Oberle Packing Co. v. City of Portland*, 79 Or. 260, 154 Pac. 410; *City of Los Angeles et al. v. Lewis*, 175 Cal. 777, 167 Pac. 390; *Purple Truck Garage Co. v. Campbell*, 119 Or. 484, 250 Pac. 213, 51 A. L. R. 816; *Fisher's Blend Station v.*

*State Tax Com.*, 182 Wash. 163, 45 Pac. (2d) 942, 944; *State v. O'Leary*, 43 Mont. 157, 115 Pac. 204; *City of Los Angeles v. Lewis*, 175 Cal. 777, 167 Pac. 390; *State v. Peterson*, 27 Wyo. 185, 194 Pac. 342, 13 A. L. R. 1284; *Chicago, M. & St. P. Ry. Co. v. Board of Railroad Commrs.*, 76 Mont. 305, 247 Pac. 162, 163; *Oregon Tunnel Dist. No. 1 v. Moore*, 120 Or. 594, 253 Pac. 1; *Smith v. Barnard*, 142 Or. 567, 21 Pac. (2d) 204; *Abbott v. McNutt*, 218 Cal. 225, 22 Pac. (2d) 510, 511, 89 A. L. R. 1109; *Anderson v. Thomas*, 144 Or. 572, 26 Pac. (2d) 60; *State v. Armijo*, 38 N. M. 73, 28 Pac. (2d) 511; *Miller v. State Board of Equalization*, 97 Mont. 13, 33 Pac. (2d) 563.)

The unconstitutionality of a statute is one thing, acts of an officer, unlawful because not in accordance with a constitutional statute are another. Herein, as indicated, we have neither unconstitutional statute, nor so far as the record discloses, unlawful acts of an officer.

 Conceding that tax statutes are to be construed strictly in favor of the taxpayer, does not impair the sufficiency or adequacy of this statute, because there is no provision which may not be construed in the light of this doctrine and still leave unimpaired the ultimate conclusion that the legislature intended to tax the mining industry as an occupation on a net yearly output basis, as reported by the miner to the assessor, less certain defined deductions, and that this tax is to be collected by the Commissioner of Law Enforcement and paid into the public school fund.

" . . . . We are not in accord with the position taken by counsel for respondent that, in construing statutes *in pari materia*, we must follow the word, and not the purpose, of the law. All statutes pertaining to revenue are to be construed most strictly in favor of the object of the statute; that is, in favor of the purpose of the statute."

(*Salisbury v. Lane*, 7 Ida. 370, 375, 63 Pac. 383.)

 *Parsons v. Wrble*, 21 Ida. 695, 702, 123 Pac. 638. There is no question herein of neglect of duty or invalid ineffectual legislation prejudicial to appellants' constitutional rights. (*Overland Co. v. Utter*, 44 Ida. 385, 394, 257 Pac. 480; *Riley v. Havens*, 193 Cal. 432, 225 Pac. 275; *In re Parrott's Estate*, 199 Cal. 107, 248 Pac. 248.)

The most that can be said in favor of appellants' position is that two rules of statutory construction must be harmonized and applied. One that every intendment in favor of the constitutionality of a statute must prevail; the other that a tax statute must be strictly construed in favor of the tax payer. The definitive resultant of these two contending forces is that as to the validity of a statute it must be liberally construed to sustain its constitutionality, as to its application (except in certain instances not involved herein) it will be construed in favor of the taxpayer. Aside from the analysis of the statute above set forth giving full effect to the last stated principle, appellants suggest only supposititious situations which will not be considered, since under the record herein they are mere abstract questions. (*Streator v. Linscott,* 153 Cal. 285, 95 Pac. 42; *Reed v. Mullen,* 57 Okl. 179, 156 Pac. 1172; *Valencia Water Co. v. Neilson,* 27 N. M. 29, 192 Pac. 510; *Edwards v. City of Reno,* 45 Nev. 135, 198 Pac. 1090.)

"While it is true that statutes under which taxes are levied for public purposes are to be strictly construed in favor of the individual and against the taxing power it is equally true that language must not be given an unnatural construction in order to defeat the tax legislation nor the plain intent of legislation disregarded. *Riley v. Havens,* 193 Cal. 432, 225 Pac. 275. It is also true that the courts, when the language will reasonably permit, will so construe statutes that they may become operative rather than give a construction that will defeat them. Section 3541 Civ. Code; *Glassell Development Co. v. Citizens' National Bank,* 191 Cal. 375, 216 Pac. 1012, 28 A. L. R. 1427. The Codes must be construed together and harmonized wherever possible. Section 4480 Pol. Code; *People v. Central Pac. R. Co.,* 83 Cal. 393, 23 Pac. 303."

(*RCA Photophone, Inc., v. Huffman,* 5 Cal. App. (2d) 401, 42 Pac. (2d) 1059, 1061; *Continental Oil Co. v. City of Santa Fe, supra;* 59 C. J. 1131, sec. 670.)

 The claim that "value" must be determined, and that there is no one authorized to determine it, is erroneous because the statute provides that the tax is to be "equal to three per cent of the value of the ores mined," and:

"For the purpose of measuring and determining the amount of tax to be paid under the provisions of Section 1 of this act, the value of ore mined or extracted shall be the amount of money received from the mining or extracting of said ores from said mine or mining claim, after deduction (of numerous items)." (Sec. 2.)

Thus, the act is not a property valuation tax as such but an occupation excise tax measured by "the amount of money received from the mining or extracting of said ores."

The miner files a copy of his statement and pays on that basis. If there is a dispute or refusal to pay court action follows. Certainly the taxpayer may not complain that in the first instance his own return is the basis of computation. No assessment by anyone is called for or is necessary as the legislature has fixed the basis for taxation. Counsel for appellants argue there might be lack of uniformity between different taxpayers in different localities. Two adequate answers immediately suggest themselves: As elsewhere stated, before the court will pass upon such a point it must be actually presented in a real controversy; second, the court action specified in the statute is certainly due process sufficient to make uniform the matter of deductions etc. thus resulting in and leading to uniform taxation.

The remaining charges of uncertainty rest on no factual basis herein entitling or requiring their present determination. (*Standard Oil Co. v. Brodie, supra.*)

Appellants' last attack is that due process is denied because it is asserted the report by the taxpayer is a final and arbitrary fixation of net returns, binding irrespective of the true value thereof, without a hearing, relying on this statement in *Oertel Co. v. Glenn,* 13 Fed. Supp. 651:

"The act here in question measures the tax according to the value of the capital stock of the corporation. The taxpayer is authorized under the provisions of the act to declare the value, but this cannot be arbitrarily done; there must be a basis in fact for its conclusion. If the statute authorizes an arbitrary determination, it would be void for uncertainty. A statute which either forbids or requires the doing of an act in terms so vague that men of common

intelligence must necessarily guess at its meaning and differ as to its application it violates the Fifth Amendment.''

But the court therein held the provisions in the statute therein considered, similar to the statute herein, were to be construed as permitting correction and allowed recovery for over payment, hence not a denial of due process, stating:

''The facts appearing in these proceedings show that there was no proper determination of the value of the capital stock as declared by the plaintiff in its original return, and it further appears that the amended return was filed before excess profits tax liability had accrued. I am of the opinion that the mistake alleged to have been made in the preparation of the original return is one that can be corrected by an amended return if filed before an excess profits tax return is due.''

While *Wm. B. Scaife & Sons Co. v. Driscoll*, 18 Fed. Supp. 748, did not entertain a suit to restrain the collection it did follow *Oretel Co. v. Glenn, supra,* on the point being considered—due process—thus:

''As we look at this case, the plaintiff has an adequate remedy at law for the recovery of any taxes it may be compelled to pay, based on a computation made upon the capital stock value given by the plaintiff in its first return rather than its second return. The case of *Oertel Co. v. Glenn* (D. C.) 13 Fed. Supp. 651, is an example of such a suit at law, brought to recover excess-profits taxes paid under similar provisions of the act of 1933.''

If the return is not correct, payment of the tax based on the amount shown in such return would not be payment of ''the tax provided for'' in the statute, and section 1 then gives court action with full opportunity for correct determination of any claimed deduction or allowance, thus fully meeting the requirement of *Mays v. District Court*, 34 Ida. 200, 200 Pac. 115, relied on by appellants, thus:

''If the remedy provided by sec. 7036 were intended to be exclusive, the section would be clearly unconstitutional. No person may be deprived of his property without due process of law. (Const. I, sec. 13). Due process of law requires that one be heard before his rights are adjudged.''

Due process derives herein not only from the court action specifically authorized by sec. 8, but there are no such arbitrary provisions herein preventing injunctive relief against over, or under, taxation by the Commissioner unlawful, arbitrary or otherwise, as compelled the holding of partial unconstitutionality of the sales tax statute. (Chap. 12, sec. 6, First Ex. Sess. Laws, 1935) in *Johnson v. Diefendorf*, 56 Ida. 620, 630–632, 57 Pac. (2d) 1068, and the holding therein sustaining the balance of that statute upholds this statute as against appellants' attack in this particular, i. e., denial of due process because of lack of hearing. (See, also, *Giragi et al. v. Moore*, (Ariz.) 64 Pac. (2d) 819, 110 A. L. R. 320.)

In *Barwise v. Sheppard*, 299 U. S. 33, 57 Sup. Ct. 70, 81 L. ed. 23, the United States Supreme Court had under consideration a statute of the state of Texas which imposed on the production of oil a tax measured by the extent of the production, to be borne ratably by all interested parties. The court there held that though denominated an occupation tax, it was in effect an excise tax, and therefore not an arbitrary fiat violating the due process clause of the Fourteenth Amendment.

Without further direct and detailed reference to all the multiferious minutiae of appellants' points of attack, the above analysis is sufficient to substantially dispose of all the material issues.

Judgments *affirmed*. Costs awarded to respondents.

Holden, C. J., and Morgan, and Ailshie, JJ., concur.

---

ON REHEARING.

April 7, 1938.

GIVENS, J.—Appellant applied for a rehearing which was granted in part.

If we understand correctly, counsel for appellant urges that their argument adverted to in our previous opinion that it would be unconstitutional to construe the statute

as permitting taxation of lode mining and not placer mining, applied only if the tax be considered as a property tax, but that as an occupation tax such classification would not offend, further citing (*State Bd. of Tax Commrs. v. Jackson,* 283 U. S. 527, 51 Sup. Ct. 540, 75 L. ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536; *Metropolitan Cas. Ins. Co. v. Brownell,* 294 U. S. 580, 55 Sup. Ct. 538, 79 L. ed. 1070; *J. C. Penney Co. v. Diefendorf,* 54 Ida. 374, 386, 32 Pac. (2d) 784; *Diefendorf v. Gallet,* 51 Ida. 619, 10 Pac. (2d) 307; *United Pacific Ins. Co. v. Bakes,* 57 Ida. 537, 67 Pac. (2d) 1024).

Counsel urges that the decisive point is not classification but that the statute does not by its terms include placer mining. We of course recognize and admit there are many differences between lode and placer mining, and have carefully reexamined this issue and counsel's authorities, but adhere to our former views that the legislature by the terms of the statute under consideration, intended to and did make it apply to both lode and placer mining.

The former opinion is therefore reaffirmed.

Holden, C. J., and Morgan, and Ailshie, JJ., concur.